## DINGLEY & Another *v.* OLER & Another.

## OLER & Another *v.* DINGLEY & Another.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MAINE.

Argued March 8, 9, 1886.—Decided April 5, 1886.

D, a dealer in ice, finding himself late in the season of 1879 in possession of a large quantity, which threatened to become a total loss, pressed O, another dealer, to buy a part of it. O declined to purchase, but offered to take a cargo and " return the same to you next year from our houses." D accepted O's offer, and delivered the cargo of ice to him that season. Early in July of the season of 1880 D verbally requested O to deliver the ice. On the 7th of July O wrote to D : " It is not just or equitable for you to expect us to give you ice now worth $5.00 per ton when we have letters of yours offering the ice that we got at fifty cents per ton. We must therefore decline to ship the ice for you this season, and claim as our right to pay you for the ice in cash at the price you offered it to other parties here, or give you ice when the market reaches that point." D answered by letter, dated July 10th, that he had sold the ice in advance in expectation of its delivery to him, and it did not seem to him right that O should ask for a postponement in the delivery. To this O answered on the 15th of July by letter, in which, after restating facts which made the demand in his opinion inequitable, he

said : " We cannot therefore comply with your request to deliver the ice claimed, and respectfully submit that you ought not to ask this of us in view of the facts stated herein and in ours of the 7th."   " We will be glad to hear from you in reply, but will be more pleased to have a personal interview, and venture to suggest that you come here for the purpose."  No reply was made to this suggestion, either personally or by letter, and this suit was commenced six days later.  *Held :*

1. That the contract gave O the option, during the whole shipping season of 1880, of delivering ice to D in return for the cargo received in 1879, he giving D reasonable notice of the time of delivery when fixed, and an opportunity to prepare for receiving and taking it away from O's houses.

2. That O's answers of the 7th and 15th July were not intended by him to be, and were not a final refusal to perform the contract on his part ; and that at the time of the commencement of the action there had been no breach of the contract ; and therefore,

3. That it was unnecessary to discuss or decide whether an absolute refusal by O, in the middle of the shipping season of 1880, to perform his contract at all would have conferred upon D a right of action for a breach before the expiration of the contract period for performance.

This was an action of assumpsit brought by Dingley Brothers in the Superior Court of the County of Kennebec, in Maine, against W. M. Oler & Co., of Baltimore, to recover damages for the alleged breach of an agreement, whereby, it was averred, the defendants undertook and promised, in consideration of $3245\frac{25}{100}$ tons of ice delivered to them by the plaintiffs in 1879, to return and deliver to the plaintiffs the same quantity of ice from the defendants' ice-houses in the year 1880.

The case was removed by the defendants into the Circuit Court of the United States for the District of Maine, when the cause was put at issue by a plea of *non assumpsit*, and was submitted to the court by the parties, the intervention of a jury having been duly waived.

The court made a special finding of the facts, and, in pursuance of the conclusions of law based thereon, rendered judgment in favor of the plaintiffs for the sum of $7335.35.

Exceptions were taken by each party to rulings of the court, on which errors are assigned, the cause being brought here for review on writs of error sued out by the respective parties.

The court found, as matter of fact, that late in the season of 1879, the plaintiffs, finding themselves in possession of a large quantity of ice undisposed of, and which threatened to be a

total loss, pressed the defendants to buy some or all of it. Both parties were dealers in ice, cutting it upon the Kennebec River and shipping it thence during the season, that is, while the river was open.

The offers of the plaintiffs were rejected, but the defendants, by their letter of 6th September, 1879, made a counter offer to take a cargo and "return the same to you next year from our houses." The plaintiffs, by their letter of September, 1879, accepted this offer and several cargoes were delivered upon the same terms; the total delivery was $3245\frac{25}{100}$ tons.

In July, 1880, one of the plaintiffs spoke to one of the defendants about delivering the ice, and he replied that he did not know about that, delivering ice when it was worth five dollars a ton, which they had taken when it was worth fifty cents a ton, but he promised to write an answer. July 7, 1880, the defendants wrote, repeating their objections, and saying, among other things, "we must, therefore, decline to ship the ice for you this season, and claim as our right to pay you for the ice in cash at the price you offered other parties here (that is, fifty cents), or give you ice when the market reaches that point."

The plaintiffs, 10th July, 1880, wrote that they had a right to the ice, and had sold it in expectation of its delivery, to which the defendants answered 15th July, 1880, reciting the circumstances of the case and the hardship of such a demand, and again denying the obligation. The letter contained this sentence: "We cannot, therefore, comply with your request to deliver you the ice claimed, and respectfully submit that you ought not to ask this of us," &c., asking for a reply or a personal interview. Neither appears to have been given, and this action was commenced July 21, 1880. The court further found that ice was worth five dollars a ton in July, 1880, and fell later in the season to two dollars a ton.

Thereupon the court held, as matter of law, that there was a contract executed by the plaintiffs, and to be executed by the defendants, who were bound to deliver $3245\frac{25}{100}$ tons of ice from their houses on the Kennebec River during the year of 1880; that the year meant the shipping season; and that the

defendants had the whole season, if they chose to demand it, in which to make delivery, and that the letters of July 7th and 15th from the defendants to the plaintiffs contained an unequivocal refusal to deliver any ice during the season; that the defendants having unqualifiedly refused to ship the ice, this action could be maintained, though brought before the close of the season, but that the damages were not to be reckoned by the price of ice in July; that what the plaintiffs lost was $3245\frac{25}{100}$ tons of ice some time during the season; that the price of ice went down after July to two dollars a ton, and the measure of damages must be reckoned at this rate, with interest from the date of the writ.

To these conclusions of law the plaintiffs below excepted, contending that the right to fix the time for delivery under the contract had vested in them, that it was properly exercised by their demand in July, 1880, that the refusal to deliver at that time constituted the breach of the contract by the defendants, and fixed the damages at $5 per ton, the market value of the ice on that day.

The defendants below excepted, contending on their part that the letters of July 7th and 15th did not constitute an unequivocal refusal to deliver any ice during the season, amounting to a renunciation, and, in that sense, a breach of the contract; and that the action was prematurely brought, the right of action, if any, not accruing until after the expiration of the period within which, by the terms of the contract, they had the option to deliver.

The letter of July 7, 1880, from the defendants to the plaintiffs was as follows:

"BALTIMORE, MD., 7th July, 1880.

Messrs. Dingley Bros., Gardiner, Me.

DEAR SIRS: As per promise of our W. M. O., we write you concerning the ice we got from you last fall. We have before us the whole of the correspondence on that head, and note throughout the same that you promise to stand between us and any loss. We quote from yours of September 9, 1879, on this head, as follows:

'In fact, we do not propose for you to become losers on account of extending us this accommodation.'

Our W. H. O. does not remember your having spoken to him while at Gardiner about your intention of selling the ice, and was very much surprised when informed that you had done so.

We are very sorry indeed that this question should have arisen between us, who have been on such friendly terms hitherto, but we feel that it is not just or equitable for you (in consideration of the ice being used by us only upon your earnest solicitation, and upon your representation that you would lose the whole unless we assisted you by taking some) to expect us to give you ice now worth $5.00 per ton when we have letters of yours offering the ice that we got at fifty cents per ton. We must, therefore, decline to ship the ice for you this season, and claim as our right to pay you for the ice, in cash, at the price you offered it to other parties here, or give you ice when the market reaches that point. Again expressing our sincere regret that any complication should arise between us, and assuring you of our innocence in the matter, we are,

Yours truly,                    W. M. OLER & Co."

The letter was answered by Dingley Bros. on July 10, as follows :

"GARDINER, *July* 10, 1880.

Messrs. W. M. Oler & Co., Baltimore.

DEAR SIRS: Yours of 7th is in hand, and we must say the conclusion you have come to greatly astonishes us.

Our sole object in making this exchange, no one knows better than yourselves, was to tide us over to such a time during this season as the ice could be marketed at some reasonable figure, and in confirmation of this we refer you to your proposition, made under date of September 6th, viz. :

'It would, of course, be more convenient for us to ship this cargo from our own houses; but remembering past favors, we feel inclined to assist you in your present difficulty, and will load this cargo from your house, should our terms be agreeable to you.

'We, of course, do not entertain the idea of buying, having a superabundance on hand, but will take this cargo and return same to you next year from our houses.'

Upon this we have acted, and in the utmost good faith made sale of the ice; and now, after all of this, and having refused to buy it yourselves, for you to ask a postponement in the delivery, seems to us hardly right.

Now, whatever the final settlement of this matter is to be, we want you to fill our order; otherwise, we cannot tell what the result might be.

It is not in our minds to do otherwise than right with any one, and certainly with yourselves; and it is our great desire not to get complicated with the third party in that matter, and assure you that your regrets cannot exceed ours that there should have arisen any difference of opinion concerning this affair, and certain it is that neither of us can afford to do wrong by the other in it; and hoping you will take a more favorable view upon further reflection, we remain,

Truly yours,        D<small>INGLEY</small> B<small>ROS</small>."

The defendants' letter of July 15th was in reply to this, and was as follows:

"B<small>ALTIMORE</small>, M<small>D</small>., 15*th July*, 1880.

Messrs. Dingley Bros., Gardiner, Me.

G<small>ENTLEMEN</small>: Yours of 10th duly received, and in reply would state that our desire to do right is quite as sincere and earnest as your own, and that we regret our inability to see the matter referred to in the same form in which you state it. The case, briefly stated, appears to us thus, as we think the correspondence of last year will show: being very much troubled with the quantity of ice left on your hands by an unfortunate contract with the Messrs. Barker, you repeatedly urged and importuned us to help you out, and promised us if we would do so that no loss should result to us from the transaction. Under these assurances we at length agreed, purely for your accommodation and relief, to take one cargo, and later, under the same influences, took more. Now you ask us,

at a time when we are pressed by our sales and by short supply, threatening us and others, to deliver to you the equivalent in tons of the ice taken from you under the circumstances stated. This does not seem to us to be fair, and certainly does not comport or agree in any way with your agreement to protect us from loss by means of the favor we were intending to do you. We are reluctant to have a disagreement or difference of opinion with old friends, but regard it our duty to protect our own interests, always, however, with a proper regard to the dictates of right. We cannot, therefore, comply with your request to deliver to you the ice claimed, and respectfully submit that you ought not to ask this of us in view of the facts stated herein and in ours of the 7th.

You do not reply to our arguments, but simply ask us to surrender our well-formed opinion.

Can you reasonably ask us to do this?

Is not your usually clear and equitable judgment clouded by the manifest considerations of self-interest pressing upon you?

We beg you to consider anew all the circumstances of the transaction and your assurances to us as inducements to make it with you, and cannot doubt that you will be led thereby to admit that your request is not reasonable. We will be glad to hear from you in reply, but would be more pleased to have a personal interview, and venture to suggest that you come here for the purpose. Our business is now more active and confining than ever before. We are deprived of the services of W. Geo., and therefore cannot come to see you.

With regards, we are,

Yours truly,                    W. M. OLER & Co."

To this no answer was returned, and the present suit was brought six days after its date.

*Mr. Orville Dewey Baker* for Dingley and another. *Mr. Leslie C. Cornish* was with him on the brief.

This contract can be construed in three ways: 1. That the Olers had the whole shipping season of 1880 in which to return the ice and the right to elect the delivery time during that

season. 2. That the Dingleys had the right to elect the time of delivery during the season. 3. That the rights were reciprocal and either party had the right to elect any reasonable time during the season.

If we adopt the theory that the defendants had the right to elect the delivery time during the whole season, then it is contended that they did elect. The plaintiffs demanded the ice; the defendants refused to deliver, and based the refusal solely on their intention to repudiate *in toto*, making no objection on the ground of their right to elect. This is equivalent to an election. An election once made is binding, and the promise is henceforth single to perform the alternative chosen, according to the maxim, *Quod semel placuit in electionibus, amplius displicere non potest.* *Brown* v. *Royal Ins. Co.*, 1 E. & E. 853; *Ward* v. *Day*, 4 B. & S. 337, 352; *Gath* v. *Lees*, 3 H. & C. 558; *Borrowman* v. *Free*, 4 Q. B. D. 500, 504, 506; *Rugg* v. *Wier*, 16 C. B. N. S. 471. Leake on Contracts, ed. 1878, 679; Co. Litt. 146 a.; 2 Wharton on Contracts, 623; Comyn's Digest, Election, C. 2; 2 Addison on Contracts, Abbott's Ed. 1188. *Houck* v. *Muller*, 7 Q. B. Div. 92, is a late and strong case for the plaintiff. Defendant sold to plaintiff 2000 tons pig iron to be delivered to plaintiff f. o. b. at defendants' wharf. "Delivery November, 1879 or equally over Nov. Dec. and January next at 6 d. per ton extra." Letters of both parties showed and Bramwell and Bagallay, L. JJ. agreed that vendee had election to take whole in November *or* equally in each of the three months.

Defendants are estopped to deny or recall their assent, plaintiffs having acted upon it by beginning suit. An election is final when the other party has acted on it and changed his position for the worse. *Borrowman* v. *Free*, above cited. And an expressed intention never to perform the contract, if made *before the contract time* for performance, though not of itself a breach and withdrawable till the other party has acted on it, becomes irrevocable by the other party's merely *bringing suit* on it. *La Société* v. *Milders*, 49 Law Times N. S. 55. See also *Mountjoy* v. *Metzger*, 12 Am. Law Reg. N. S. 442; *Swain* v. *Seamens*, 9 Wall. 254, 274.

If it is assumed that either party had the right to elect the

time of delivery during the whole season of 1880, for which there is authority in Maine (see *Bradstreet* v. *Rich*, 72 Maine, 233; *S. C.*, 74 Maine, 303); then the calling of plaintiffs for the ice in July, and the tender of vessels, and the defendants' refusal constituted a breach of the contract.

But we contend that plaintiffs had the right to elect the delivery time. They were the moving party under the contract; the one to do the first act. (1.) By the legal construction of this contract the defendants were not to fetch the borrowed ice back to the plaintiffs, but the plaintiffs were to go and get it at the houses of the defendants, and that was the place of delivery. It was a contract for articles in bulk and cumbersome. With such cumbersome property when no place of delivery is specified they are held to be deliverable only at the place where stored or manufactured. Benjamin on Sales, Perkins' Ed. § 682; Ib. Corbin's Ed., note 23, § 896; *Smith* v. *Gillett*, 50 Ill. 290; *Ragland* v. *Wood*, 71 Ala. 145. (2). Plaintiffs were the "moving agent" because they, and not the defendants, were to furnish vessels. (*a.*) Because in the absence of express agreement a *Mutuum*, like a *Commodatum*, is gratuitous, and hence the lender merely permits the borrower to come and get so much ice at the borrower's charge, and the lender is to retake at his own charge. Neither is to be at any expense in the first instance, but each agrees simply to appropriate so much ice in his own houses to the other's use, if he chooses to come and get it. Any other construction would impose burdens on the party giving the accommodation in the first instance. Story on Bailments, § 219. (*b.*) Because the place of delivery being, as we have seen, the defendants' ice houses, the getting of the ice is necessarily and as matter of law, at plaintiffs' charge. And they must first name the vessel and give notice of their readiness to receive the ice. Until this is done, there is no duty on the vendor to deliver. *Walton* v. *Black*, 5 Houston (Del.), 149; *Roberts* v. *Beatty*, 2 Penn. 63. This contract, like every other, must be construed with reference to the situation and intention of the parties at the time it was made, their own practical construction of it afterwards, and the peculiar nature of the ice business, and when so construed, it is plain that both parties

must always have contemplated that the election for 1880 was with the plaintiffs. The subsequent acts and conduct of the parties show that this was their intention and the construction which they put on the contract ; and this intention will prevail, even though in the absence of such evidence the law would construe the contract otherwise.

If either the second or the third construction here suggested is adopted, the case becomes a simple contract by defendants to do a thing on a day certain, a demand and refusal on that day, a consequent breach and damage, and the action is sustainable.

If the first construction be adopted the cases sustain that the action is still well brought. The evidence and findings show an unqualified refusal on defendants' part to perform. Even where the demand is *before* the contract time for performance has begun, a *distinct and unequivocal* refusal to perform at all, may be treated as a breach and action be brought at once. On this point we submit that the array of authority is overwhelming. It comes from the highest courts in England, the highest courts in five of the States in this country, the United States Circuit Court in Virginia and Pennsylvania, incidentally from the United States Supreme Court, and unqualifiedly from five of the most reliable text books : Leake, Chitty, and Parsons on Contracts ; Benjamin on Sales, and Sedgwick on Damages.

(1.) It has been frequently held in the case of an executory contract that if the promisor has by *any positive act* rendered himself unable to perform his part, it not only serves to dispense with the performance of any conditions precedent on the part of the promisee before bringing his action, but also is itself a breach of the contract. *Short* v. *Stone,* 8 Ad. & El. 358; *Lovelock* v. *Franklyn,* 8 Ad. & El. 371 ; *Ford* v. *Tiley,* 6 B. & C. 325 ; *Heard* v. *Bowers,* 23 Pick. 455; *Kenerson* v. *Henry,* 101 Mass. 152. Leake on Contracts, ed. 1867, 460 ; Benjamin on Sales, § 567.

(2.) When one party to an executory contract absolutely refuses to perform his contract, and before the time arrives for performance distinctly and unqualifiedly communicates that refusal to the other party, that other party can, if

he choose, treat that refusal as a breach and commence an action at once therefor. The English cases to support this proposition are (chronologically arranged) *Philpotts* v. *Evans,* 5 M. & W. 475 [1841]; *Cort* v. *Ambergate & Nottingham Railway Co.,* 17 Q. B. 127 [1851]; *Hochster* v. *De la Tour,* 2 El. & Bl. 678 [1853]; *Danube & Black Sea Railway Co.* v. *Xenos,* 11 C. B. N. S. 152 [1861]; *Frost* v. *Knight,* L. R. 5 Ex. 322 [1870]; *S. C.,* L. R. 7 Ex. 111. In this country many States have accepted and affirmed the doctrine of *Hochster* v. *De la Tour.* See *Crabtree* v. *Messersmith,* 19 Iowa, 179 [1865]; *Holloway* v. *Griffith,* 32 Iowa, 409 [1871]; *Fox* v. *Kitton,* 19 Ill. 519 [1858]; *Chamber of Commerce* v. *Sollitt,* 43 Ill. 519 [1866]; *Mountjoy* v. *Metzger,* 12 Am. Law. Reg. 442 [1873 Penn.]; *Dugan* v. *Anderson,* 36 Maryland, 567 [1872]; *Burtis* v. *Thompson,* 42 N. Y. 246 [1870]; *Howard* v. *Daly,* 61 N. Y. 362 [1875]; *Hancock* v. *New York Life Insurance Co.,* 13 Am. Law Reg. N. S. 103 [C. Ct. U. S. Virginia, 1874]; *Ex parte Pollard,* 2 Lowell, 411; *Smoot's Case,* 15 Wall. 36.

(3.) Such, then, we find to be the law in the case of a bilateral contract—that is, a contract where both parties are bound, and where the consideration of each promise is the promise of the other party. But the principle applies with much more reason in the case of a unilateral contract—as is the one at bar—one party having already performed the consideration, and the other being alone bound.

*Mr. Bernard Carter* for Oler & Co.

MR. JUSTICE MATTHEWS, after stating the case as above reported, delivered the opinion of the court.

We agree in opinion with the Circuit Court that, according to the terms of the contract, the defendants had the option of delivering the ice contracted for at any time during the whole shipping season of 1880, giving to the plaintiffs reasonable notice of the time when fixed, and an opportunity to prepare for receiving and taking it away from the defendants' houses. The language of the contract was that the defendants were to "return the same (the ice) to you next year from our houses."

Next year, it is not denied, means the shipping season of 1880, during which navigation was open, and in time for the plaintiffs, on notice, to obtain vessels, send them to the ice houses for loading, and get out of the river before it was closed to navigation. The defendants were to deliver, and although that, under the circumstances, required nothing on their part but to be ready for the plaintiffs to receive and load on their vessels, that state of readiness might depend upon other engagements of the defendants in respect to ice in the same houses, so that they had the right under the terms of the contract to consult their convenience as to the particular day when they would furnish to the plaintiffs the ice for shipment. The first and principal act to be done under the contract was to be done by the defendants, that is, the delivery, and the words of the agreément are fully satisfied when that is done at any reasonable time within the season of 1880. And this confers upon the defendants, bound to make the delivery, the choice of the time within the period permitted by the contract. *Wheeler* v. *New Brunswick & Canada Railroad Co.*, 115 U. S. 29.

We differ, however, from the opinion of the Circuit Court that the defendants are to be considered, from the language of their letters above set out, as having renounced the contract by a refusal to perform, within the meaning of the rule which, it is assumed, in such a case, confers upon the plaintiffs a right of action before the expiration of the contract period for performance. We do not so construe the correspondence between the parties. In the letter of July 7th, the defendants say: " We must, therefore, decline to ship the ice for you this season, and claim, as our right, to pay you for the ice, in cash, at the price you offered it to other parties here, or give you ice when the market reaches that point." Although in this extract they decline to ship the ice that season, it is accompanied with the expression of an alternative intention, and that is, to ship it, as must be understood, during that season, if and when the market price should reach the point which, in their opinion, the plaintiffs ought to be willing to accept as its fair price between them. It was not intended, we think, as a final

and absolute declaration that the contract must be regarded as altogether off, so far as their performance was concerned, and it was not so treated by the plaintiffs. For, in their answer of July 10th, they repeat their demand for delivery immediately, speak of the letter of the 7th instant as asking "for a postponement of the delivery," urge them "to fill our order," and close with "hoping you (the defendants) will take a more favorable view upon further reflection," &c. Here, certainly, was a *locus penitentiæ* conceded to the defendants by the plaintiffs themselves, and a request for further consideration, based upon a renewed demand, instead of abiding by and standing upon the previous one.

Accordingly, on July 15th, the defendants replied to the demand for an immediate delivery to meet the exigency of the plaintiffs' sale of the same ice to others, and the letter is evidently and expressly confined to an answer to the particular demand for a delivery at that time. They accordingly say: "Now you ask us at a time when we are pressed by our sales and by short supply threatening us and others, to deliver to you the equivalent in tons of the ice taken from you under the circumstances stated. This does not seem to us to be fair," &c. "We cannot, therefore, comply with your request to deliver to you the ice claimed, and respectfully submit that you ought not to ask this of us in view of the fact stated herein and in ours of the 7th." This, we think, is very far from being a positive, unconditional, and unequivocal declaration of fixed purpose not to perform the contract in any event or at any time. In view of the consequences sought to be deduced and claimed as a matter of law to follow, the defendants have a right to claim that their expressions, sought to be converted into a renunciation of the contract, shall not be enlarged by construction beyond their strict meaning.

The view taken by the Circuit Court of the correspondence and conduct of the parties, and which we hold to be erroneous, brought the case within the rule laid down by the English courts in *Hochster* v. *De la Tour*, 2 El. & Bl. 678; *Frost* v. *Knight*, L. R. 7 Ex. 111; *Danube & Black Sea Railway Co.* v. *Xenos*, 11 C. B. N. S. 152, and which, in *Roper* v. *Johnson*,

L. R. 8 C. P. 167, 178, was called a novel doctrine, followed by the courts of several of the States, *Crabtree* v. *Messersmith,* 19 Iowa, 179; *Holloway* v. *Griffith,* 32 Iowa, 409; *Fox* v. *Kitton,* 19 Ill. 519; *Chamber of Commerce* v. *Sollitt,* 43 Ill. 519; *Dugan* v. *Anderson,* 36 Maryland, 567; *Burtis* v. *Thompson,* 42 N. Y. 246, but disputed and denied by the Supreme Judicial Court of Massachusetts in *Daniels* v. *Newton,* 114 Mass. 530, and never applied in this court. Accordingly, the right to maintain the present action was justified upon the principle supposed to be established by those cases.

The construction we place upon what passed between the parties renders it unnecessary for us to discuss or decide whether the doctrine of these authorities can be maintained as applicable to the class of cases to which the present belongs; for, upon that construction, this case does not come within the operation of the rule invoked.

In *Smoot's Case,* 15 Wall. 36, this court quoted with approval the qualifications stated by Benjamin on Sales, 1st ed. 424, 2d ed. § 568, that " a mere assertion that the party will be unable, or will refuse to perform his contract, is not sufficient; it must be a distinct and unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made; for, if he afterwards continue to urge or demand a compliance with the contract, it is plain that he does not understand it to be at an end."

We do not find any such refusal to have been given or acted upon in the present case, and the facts are not stronger than those in *Avery* v. *Bowden,* 5 El. & Bl. 714; *S. C.,* 6 El. & Bl. 953; which were held not to constitute a breach or renunciation of the contract. The most recent English case on the subject is that of *Johnstone* v. *Milling,* in the Court of Appeal, 16 Q. B. D. 460, decided in January of the present year, which holds that the words or conduct relied on as a breach of the contract by anticipation must amount to a total refusal to perform it, and that that does not by itself amount to a breach of the contract unless so acted upon and adopted by the other party.

The present action was prematurely brought before there had been a breach of the contract, even in this sense, by the

defendants, for what they said on July 15th amounted merely to a refusal to comply with the particular demand then made for an immediate delivery.

*The judgment is accordingly reversed upon the writ of error sued out by the defendants below, and the cause remanded, with instructions to take further proceedings therein according to law ; and upon the writ of error of plaintiffs below judgment will be given that they take nothing by their writ of error.*