LONSDALE GRAIN COMPANY, Appellant, v. CAN-
TON. MILLING COMPANY, Respondent.

**Kansas City Court of Appeals, January 29, 1917.**

1. **CONTRACT: Cancellation by One Party: Consent.** One party to a
   contract cannot make a valid cancellation of a contract and thus
   of his own will escape its performance and deprive the other
   party of a right to its enforcement. To have a valid renunciation
   the other party must consent.

2. ———: **Inability to Perform: Threat to Repudiate.** The mere as-
   sertion of an inability to go on with a contract, or a threat to
   abandon it is not a repudiation of such contract.

3. ———: **Evidence: Repudiation: Other Reasons.** When one party
   to a contract. renounces and repudiates it and thereupon the other
   party treats it as abandoned by the first party, evidence of other
   disconnected and distinct reasons for the repudiation by the first
   party was properly excluded.

Appeal from Jackson Circuit Court.—*Hon. Elijah
Robinson,* Special Judge.

AFFIRMED.

*Morrison, Nugent & Wylder* for appellant.

*Fyke & Snider* for respondent.

ELLISON, P. J.—Plaintiff resided in Kansas City,
Missouri, and defendant in Canton, Kansas. On the
22nd of June, 1914, plaintiff contracted for the pur-
chase of defendant, 10,000 bushels of No. 2 wheat at
eighty-four cents per bushel, to be delivered f. o. b.
Galveston, Texas, to be paid for according to Galveston
weights and grades; the wheat to be shipped during
the month of August following. Defendant delivered
4899 bushels and ten pounds of the wheat as agreed
leaving 5100 bushels and fifty pounds not delivered.
Plaintiff's action is for damages, by reason, as it al-
leges, "of defendant's failure and refusal to ship said

wheat as provided by said contract," whereby plaintiff was "compelled and did purchase the remainder of said wheat in the open market," etc., whereby plaintiff was damaged in the sum of $1313.46 upon which defendant was entitled to a credit of $223.30.

Defendant's answer admitted the contract and delivery of part of the wheat and alleged that the remainder was not delivered for the reason that plain-cancelled the contract and notified defendant not to ship any more. The answer then set up a counterclaim for balance unpaid on the wheat shipped amounting to $293.30. There was a reply setting up reasons which it is insisted show there was no cancellation and various other matters not necessary to notice further than what appears further on. The cause was tried by Hon. ELIJAH ROBINSON, as Special Judge, with the aid of a jury. There was a verdict and judgment against plaintiff, and for defendant's counterclaim.

·On the 3rd of August, 1914, after nearly half the bushels purchased by plaintiff had been delivered by defendant under the contract, plaintiff telegraphed defendant as follows:

"On account existing stringency in money matters we think it better for all concerned that shipments to gulf be stopped at once. In fact we have reached a point where we will have to refuse payment on drafts covering such shipments. Will make any extensions necessary in contracts and are bending our best efforts toward making arrangements to have as much of this wheat as possible diverted to this market and will give you instructions to ship your wheat at the earliest possible moment."

Afterwards, on August 21st, without request, plaintiff wrote to defendant extending time of shipment to September 15th. In the meantime some communication passed concerning the balance coming to defendant on deliveries already made, when on the 11th of September defendant wrote plaintiff acknowledging account of sales on a few cars of the wheat which had been shipped and asking for return of balance. The letter

then proceeded to refer, with regret, to the fact that plaintiff did not take the "rest of the wheat on the contract as we had the wheat bought and coming in at the time you stopped us", etc.

Each party asked several instructions and all were refused; the court of its own motion giving the following:

"The court instructs the jury that on receipt of the telegram of August 3, 1914, defendant had a right to treat the contract as annulled, and if it did so, plaintiff is not entitled to recover on its petition, and defendant is entitled to recover on its counterclaim.

"On the other hand, if defendant after receipt of the telegram of August 3, 1914, agreed with plaintiff to hold for plaintiff the balance of the wheat covered by the contract and afterwards refused to deliver the balance of the wheat, then the plaintiff is entitled to recover on its petition, and defendant is not entitled to recover on its counterclaim."

The contest between the parties is largely over the question whether that is a correct instruction. It seems to be undoubted law, and it is good reason too, that one party alone cannot make a valid cancellation of a contract and thus of his own will escape its performance, or deprive the other party of a right to its enforcement; and that to have a valid renunciation by one, the other must consent thereto. [Johnstone v. Milling Vo., 16 L. R. Q. B. Div. 460; Dingley v. Oler, 117 U. S. 490; Cleveland Rolling Mill v. Rhodes, 121 U. S. 255; Kilgore v. Baptist Ass'n, 90 Texas, 139; Central Coal and Coke Co. v. Good & Co., 120 Fed. 793; 3 Elliott on Contracts, art. 2033, page 213; 3 Page on Contracts, art. 1438, page 2224.] And so it is said that "a mere assertion of inability to go on with a contract is no notice of repudiation". [1 Beach on Contracts, art. 413, page 497.] And "a mere threat to abandon a contract does not constitute a breach unless it is carried out." [3 Elliott on Contracts, art. 2032, page 211.]

Applying these principles of law, we conclude that plaintiff's letter of August 3rd, was a repudiation of the contract on its part and that it gave defendant full right to accept and treat it as such. It is a flat direction to stop further shipments of the wheat, and is an announcement that if any more shipments are made, drafts for payment will be refused. The only question therefore, under the foregoing statements of the law, is, did defendant accept and treat it as a renunciation or cancellation? It cannot be said under the evidence, as a matter of law, whether it did or did not; and it thereby became a question for the jury, and was duly submitted in the foregoing instruction.

The second paragraph of the instruction is based on evidence having a tendency to show that after receiving this telegram, defendant agreed to hold the wheat then undelivered and then afterwards refused to deliver. If that was a fact, then the right of recovery was in the plaintiff and so the court instructed, and we accept the verdict of the jury.

We have given the course of argument made by plaintiff full consideration and are not led to believe that it has shown any error in the plain directions given in the instruction.

Much complaint is made against the trial court for excluding evidence offered by defendant to show "that at the time the telegram was sent, there was an embargo on shipments to Galveston, so that defendant could not have shipped the wheat". And that "the railroads were so congested as regards shipments to Galveston that it was impossible to tell when they could get in and be unloaded". That elevators were glutted with wheat, etc. Manifestly this had nothing to do with the question whether plaintiff renounced the contract and defendant accepted the renunciation. Nothing of that sort is stated in the telegram announcing plaintiff's determination. On the contrary, other distinct reasons were given, *viz*, money stringencies. It would be altogether unreasonable to allow a party to repudiate a contract for a certain stated ground, have

the other party to so treat it, and then afterwards set up an altogether different and distinct reason why such other party should not be allowed to so treat it.

We think the case was fairly tried and that the judgment was for the right party. It is accordingly affirmed. All concur.