## KRAFT CORRUGATED CONTAINERS, Inc., v. TRUMBULL ASPHALT CO. OF DELAWARE.

District Court, D. New Jersey.
June 6, 1939.

Milton, McNulty & Augelli and Joseph Keane, all of Jersey City, N. J., for plaintiff.

Katzenbach, Gildea & Rudner and Louis Rudner, all of Trenton, N. J., for defendant.

FORMAN, District Judge.

Plaintiff and defendant entered into an agreement on November 31, 1936, whereby defendant agreed to furnish plaintiff's building with live steam for manufacturing and heating purposes. It was agreed that plaintiff, defendant and a third party should "share equally between them each to the extent of one third, the operating expenses of the boilers and the boiler plant, to the end that they each receive their respective requirements of steam at actual cost and the lowest minimum price obtainable under the circumstances". A further provision of the contract with reference to cost of steam to plaintiff provided as follows:

"For the purpose of the first month's operation and pending the accurate computation of the figures going into the cost of the steam and thereby determining the actual cost of said steam, it is agreed between the parties that during such first month the price per 1000 lbs. of steam to Kraft shall be taken at $.45 per 1000 lbs. and in no event will the price thereof at any time be in excess of such $.45 per 1000 lbs. In the meantime, during the said month's period the figures shall be accurately computed to the end that thereafter Kraft, Trumbull and Lloyd A. Fry Roofing Company shall pay the actual cost of the steam consumed by each of them to be determined in the manner hereinabove set forth".

Plaintiff alleges that defendant agreed to furnish steam at a price not to exceed $.45 per 1,000 pounds of steam, that each monthly invoice remitted to plaintiff "showed an overcharge both as to rate and consumption", that "defendant threatened to cut off plaintiff's steam if all invoices, including overcharges were not paid in full", and that as a "result of the said threats, plaintiff paid to defendant the amount of the overcharges through duress and compulsion, and under protest." Plaintiff alleges this conduct constitutes a breach of contract, and that by virtue of this breach plaintiff was forced to erect its own boiler house to supply steam and suffer great damage.

The defendant now moves to strike the complaint on the ground that it fails to state a cause of action.

Considerable emphasis is laid upon the fact that the payments made by plaintiff in settlement of the alleged overcharges appear to have been voluntarily made, and numerous authorities are cited to sustain the proposition that monies paid voluntarily without mistake of fact or in the absence of fraud, duress or coercion cannot be recovered.

With the applicability of this proposition we are not concerned. It does not appear that plaintiff is seeking a refund of monies paid. On the contrary, plaintiff is suing for damages for breach of the entire contract. The only question for determination is whether or not a breach of contract is alleged which gives rise to a cause of action. This does not depend upon whether or not plaintiff made payments pursuant to the contract voluntarily or involuntarily.

As to whether or not a breach was set out in the complaint the following quotation is material: "Repudiation by one party, to be sufficient in any case to entitle the other to treat the contract as absolutely and finally broken and to recover damages as upon total breach, must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation. Roehm v. Horst, 178 U.S. 1, 14, 15, 20 S.Ct. 780, 44 L.Ed. 953; Smoot's Case, 15 Wall. 36, 49, 21 L.Ed. 107; Dingley v. Oler, 117 U.S. 490, 503, 6 S.Ct. 850, 29 L.Ed. 984; Kimel v. Missouri State Life Ins. Co., [10 Cir.], 71 F.2d 921, 923. Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy. Daley v. People's Building, L. & S. Ass'n, 178 Mass. 13, 18, 59 N.E. 452. There is nothing to show that any refusal of the company to pay the monthly disability benefits was not made in good faith." Mobley v. N. Y. Life Ins. Co., 295 U.S. 632, 638, 55 S.Ct. 876, 878, 79 L.Ed. 1621, 99 A.L.R. 1166.

The complaint alleges only that the defendant threatened to cut off the steam if

plaintiff failed to pay alleged overcharges, and that this constitutes duress, coercion and compulsion. According to the face of the complaint by which we must be guided the fact is that the defendant threatened to cut off the steam conditionally—in the event that the alleged overcharges were not paid. This did not amount to an "unqualified refusal, or declaration of inability, substantially to perform according to the terms of his (its) obligation".

Finally, it does not appear from the complaint herein that defendant breached the alleged contract in bad faith. For all we know the defendant might have insisted upon an interpretation of the contract which was in conflict with plaintiff's construction of the same. But if this difference in opinion was bona fide upon the part of the defendant the plaintiff has not set forth such a case of repudiation as will constitute a cause of action for breach of the entire contract.

Under appropriate allegations of breach coupled with a demand for damages consistent with such allegations plaintiff may have a sustainable cause of action. Though the complaint herein will be stricken, it will not prejudice the merits of its cause of action.

The motion to strike the complaint is granted.