## KRAFT CORRUGATED CONTAINERS, Inc., v. TRUMBULL ASPHALT CO. OF DELAWARE.

District Court, D. New Jersey.

Feb. 7, 1940.

Milton, McNulty & Augelli, of Jersey City, N. J. (by Joseph Keane, of Jersey City, N. J.), for plaintiff.

Katzenbach, Gildea & Rudner, of Trenton, N. J. (by Louis Rudner, of Trenton, N. J.), for defendant.

FORMAN, District Judge.

Plaintiff and defendant entered into an agreement on November 31, 1936, whereby defendant agreed to furnish plaintiff's building with live steam for manufacturing and heating purposes. It was agreed that plaintiff, defendant and a third party should "share equally between them each to

the extent of one third, the operating expenses of the boilers and the boiler plant, to the end that they each receive their respective requirements of steam at actual cost and the lowest minimum price obtainable under the circumstances". A further clause of the contract provides as follows: "For the purpose of the first month's operation and pending the accurate computation of the figures going into the cost of the steam and thereby determining the actual cost of said steam, it is agreed between the parties that during such first month the price per 1000 lbs. of steam to Kraft shall be taken at $.45 per 1000 lbs. and in no event will the price thereof at any time be in excess of such $.45 per 1000 lbs. In the meantime, during the said month's period the figures shall be accurately computed to the end that thereafter Kraft, Trumbull and Lloyd A. Fry Roofing Company shall pay the actual cost of the steam consumed by each of them to be determined in the manner hereinabove set forth."

In Count One of the complaint plaintiff makes the following allegations and claims $50,000 damages.

"4. That under and pursuant to said agreement, the defendant agreed to furnish steam to the plaintiff for use in such business at a price equalling the cost thereof, but in no event to exceed the rate of $.45 per thousand pounds of steam."

"6. That heretofore and between on or about the 29th of December, 1936 and the 15th of October, 1938, defendant began to and did furnish steam to plaintiff, and billed plaintiff therefor by monthly invoices.

"7. That the invoices, as aforesaid, continuously and persistently showed an overcharge by defendant to plaintiff, both as to the rate and consumption for the steam supplied.

"8. That the defendant made such overcharges, as aforesaid, wilfully, maliciously and in bad faith, for the purpose of unlawfully exacting money from the plaintiff and ruining its business, and with full knowledge that such overcharges were in excess of the prices at which the defendant agreed to supply the steam to plaintiff.

"9. That immediately upon the receipt of the invoices in which an amount in excess of the agreed maximum rate was charged, the plaintiff notified the defendant, pointing out the excess and refusing to pay any sum in excess of the agreed maximum rate. The defendant then stated to the plaintiff that it could not supply steam at the agreed maximum rate and attempted to have the contract modified, which the plaintiff refused to have done. Nevertheless, the defendant continued to wilfully and maliciously and in bad faith violate the terms of the aforesaid agreement. The defendant was at all times ready, willing and able to pay, and did tender payment of any and all amounts due under the terms of the contract."

"11. That in or about January, 1938 and many times thereafter, defendant, knowing full well that steam was indispensable to the plaintiff's business, wilfully and in bad faith threatened to immediately shut off plaintiff's supply of steam if plaintiff did not forthwith pay defendant the amount of the aforesaid overcharges, notwithstanding such acts would be in violation of the agreement. Plaintiff knew that defendant was at all times capable of carrying out the said threats, and verily believes that if defendant's demands were not complied with defendant would have carried them out and immediately have deprived plaintiff of its supply of steam, causing irreparable loss to plaintiff.

"12. * * * [That plaintiff] was forced by the duress, coercion, compulsion, demands and threats of the defendant to pay amounts and sums in excess of the agreed price, which it would not have paid except for such coercion, compulsion, duress, demands, and threats, and that such payments were made under protest and without modifying or waiving any of its rights under the agreement herein.

"13. That defendant's acts and conduct in making charges for steam in excess of the rates and terms of the agreement herein, and in demanding payment thereof, defendant knowing full well that such charges were in excess of the terms and conditions of the agreement herein, and in threatening to shut off the supply of steam, constituted a wilfull, substantial and material breach of the terms and conditions of the agreement."

"15. That as a result of the said continuous and persistent breaches of the agreement, the plaintiff, not being able to get steam from any other source, and being unable to move its plant because of expense, irreparable loss of business, and the lease of its present site, was obliged to build its own steam plant, at a great cost and expense."

■ The original complaint herein was stricken, Kraft Corrugated Containers, Inc., v. Trumbull Asphalt Company, Inc., D. C., 27 F.Supp. 826, because it did not allege that the defendant repudiated the contract in bad faith. We still think that such an allegation is necessary in view of the fact that this controversy apparently arose out of conflicting interpretations of the contract.

■ It is now contended that the complaint as amended is deficient in that it alleges only the ultimate fact of bad faith when it should set forth the basic, underlying facts. We disagree. The complaint alleges bad faith in that defendant knowingly overcharged plaintiff over its protest, that defendant sought to modify the contract, and that it threatened to cut off plaintiff's supply of steam. This is sufficient.

■ The second count alleges overpayments, demands an accounting and discovery, and judgment for $50,000. The recitals contained in the first four paragraphs of the first count are by reference incorporated in the second count, but contribute nothing more than to make the count essentially one for the recovery of excess payments of money to the defendant. There are no allegations in this count of the circumstances which surrounded the over-payments, and upon the face of the second count they appear to have been made voluntarily. In the disposition of the motion to strike the original complaint, Kraft Corrugated Containers v. Trumbull Asphalt Co., supra, this court observed that numerous authorities were cited to sustain the proposition that monies paid voluntarily without mistake of fact or in the absence of fraud, duress or coercion cannot be recovered. No basis for relief by way of accounting or discovery appears in this count, nor is it helped by the hybrid nature given to it by the addition of a prayer for damages. Count two should be stricken.

At the time the motion to strike was made defendant demanded a bill of particulars.

Rule 12 (e) of Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c, provides: "* * * a party may move for a more definite statement or for a bill of particulars of any matter which is not averred with sufficient definiteness or particularity to enable him properly to prepare his responsive pleading or to prepare for trial".

Requests No. 1 and 2, that plaintiff state for each month the rate per 1,000 pounds of steam, the quantity, and the extent of the over-charges made by defendant, are denied, except that portion requesting information as to the extent of the over-charges with reference to rate and quantity which is allowed.

Request No. 3, that plaintiff elaborate its allegations of bad faith, malice and wilfullness, is denied for reasons hereinbefore set forth with relation to the sufficiency of the amended first count of the complaint.

Request No. 4, that plaintiff furnish the date and amount of every payment made to defendant, is denied.

Request No. 5, that plaintiff set forth the date of each over-payment and its extent, is granted.

Request No. 6, that plaintiff furnish the date the construction of its plant was begun and the date of completion, is granted.

■ The particulars denied herein are not necessary for the formulation of a responsive pleading, because they obviously concern matters equally within the knowledge of both parties, and where particulars have been granted they appear to be necessary and not within the knowledge of the defendant.