**COMMONWEALTH EDISON COMPANY, Plaintiff,**

v.

**DECKER COAL COMPANY, Defendant.**

**No. 84 C 9573.**

United States District Court, N.D. Illinois, E.D.

July 2, 1985.

Paul W. Schroeder, Pamela B. Strobel, Isham, Lincoln & Beale, Chicago, Ill., for plaintiff.

Stephen R. Patton, Kirkland & Ellis, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Commonwealth Edison Company's (Edison) motion for judgment on the pleadings raises the question whether Decker Coal Company (Decker) repudiated two contracts between the parties covering the purchase, mining and delivery of 462,000 tons of coal. Because it is far from clear as a matter of law that Decker repudiated the contracts, Edison's motion is denied.

## FACTS

On June 4, 1982, Decker and Edison entered into two related contracts. In the Coal Lease Purchase Agreement, Edison agreed to purchase in five annual installments Decker's lease interest in 2.15 million tons of unmined coal. The Coal Mining Agreement gave Decker the exclusive right to mine and deliver the coal.

The coal covered by the agreements is known as "Reserve Coal". Edison was originally obligated to purchase, and Decker to mine and deliver this coal in the years 1981–1985, under a June 20, 1974 contract. The 1982 agreements modified this arrangement by (1) obligating Edison to purchase Decker's lease interest in the Reserve Coal on July 1 of the year in which it had originally been scheduled to receive delivery of the coal and (2) deferring mining and delivery of each annual installment for five years, to the 1986–1990 period.

The 1982 Coal Mining Agreement provided the following delivery schedule:

| Year | Reserve Coal Delivered (tons) |
|------|-------------------------------|
| 1986 | 370,000 |
| 1987 | 308,000 |
| 1988 | 548,000 |
| 1989 | 462,000 |
| 1990 | 462,000 |

The Agreement provided that the Reserve Coal "shall be scheduled for delivery on a monthly basis, ratably over the year for which it is scheduled." (Subpar. 2.)

Subparagraph 1(b) of the Agreement provided that the year of delivery of the Reserve Coal could be modified at Edison's option upon proper notice. The provision at issue here reads:

... Edison may on notice to Decker on or before September 1 of the year six years preceding that in which deliveries are scheduled in accordance with subparagraph (a) above, accelerate in whole or in part the deliveries of Reserve Coal to the year five years preceding that in which it is scheduled, and with the consent of Decker, which shall not be unreasonably withheld, to any other year preceding that for which it is scheduled under subparagraph (a)....

There is no indication that the coal that Edison ordered on an accelerated basis was not to be delivered on a monthly basis ratably over the course of the year, in accordance with subparagraph 2.

In an August 22, 1984 letter to Decker, Edison stated that pursuant to subparagraph 1 of the 1982 Mining Agreement it elected to accelerate the delivery of the 462,000 tons of 1990 Reserve Coal to 1985.

On August 31, 1984 Edison sent another letter to Decker which read in its entirety:

Please refer to the Coal Mining Agreement dated June 4, 1982, as amended (1982 Mining Agreement) between Decker Coal Company and Commonwealth Edison Company.

Edison in accordance with subparagraph 1(b) of the 1982 Mining Agreement hereby elects to accelerate the deliveries of 462,000 tons of Reserve Coal from 1990 to 1984.

In the event that Decker is unable to deliver any of those tons of Reserve Coal in 1984, Edison elects to accelerate to 1985 delivery of those tons not delivered in 1984.

Please consider 115,500 tons of the Reserve Coal as ordered for the month of September 1984 and 115,500 tons as included in estimated orders for each of October and November 1984.

This letter supersedes Edison's letter dated August 22, 1984 regarding the acceleration of the 1990 Reserve Coal.

On the same date Edison sent an identical letter seeking accelerated delivery of 182,650 tons of 1991 Reserve Coal to the last four months of 1984.[1]

Decker responded to Edison's letter on September 26, 1984. The heart of its response was in the following paragraph:

Edison's notice to accelerate 462,000 tons of Reserve Coal from the year 1990 to 1984 or 1985 involves Reserve Coal that, pursuant to paragraph 1 of the parties' Coal Lease Purchase Agreement dated June 4, 1982, is scheduled to be sold to Edison on July 1, *1985*. Since Edison does not have any interest in that Reserve Coal until said date, and since Edison has not paid the Purchase Price for that Reserve Coal, Decker regards Edison's notice as ineffective. It should also be noted that the earliest year into which that Reserve Coal can be accelerated is 1986, and that deliveries thereof should be scheduled ratably each month.

Decker did, however, agree to waive its objections to notice and scheduling requirements with respect to the 182,650 tons of 1991 Reserve Coal and deliver this coal within the last four months of 1984.

The last paragraph of Decker's September 26, 1984 letter stated that:

If Edison desires to make other arrangements for the purchase of coal during 1984 or 1985, whether Reserve Coal, coal that may be subject to pending claims of force Majeure or otherwise, please contact me. We are interested in discussing these matters with Edison, as well as all of our unresolved matters. Hopefully, our companies will seek pragmatic solutions to our mutual problems as we have in the past.

On October 18, 1984 Edison responded to Decker's letter. Edison stated that it "considers that Decker's rejection of Edison's right to accelerate 462,000 tons of Reserve Coal from 1990 to 1984 or 1985 is a repudiation of Decker's obligations under both the 1982 Coal Mining Agreement and the 1982 Coal Lease Purchase Agreement...." In a November 2, 1984 letter Edison stated that Decker had repudiated the two agreements and that Edison considered this repudiation to be final. Edison also filed its complaint on November 2, 1984.

Decker sent a letter to Edison on November 10, 1984, stating that it had not repudiated the 1982 agreements covering the 462,000 tons of coal slated for 1990 delivery. The letter explained why Decker did not agree to accelerate delivery of both the 462,000 tons of 1990 coal and the 182,650 tons of 1991 coal to the last four months of 1984:

Edison telecopied to Decker two letters on August 31, 1984 which in the aggregate accelerated delivery of 644,650 tons of Reserve Coal into the last four months of 1984 at the rate of 161,163 tons per month. These notices revoked Edison's prior notice that 462,000 tons of Reserve Coal would be purchased in 1985, and were received by Decker only one day prior to the month that Edison desired to commence its purchase of these addition-

---

1. The 1991 Reserve Coal was apparently covered by a separate agreement.

al quantities. Decker has been operating without a collective bargaining agreement since the expiration of Decker's prior agreement with the Progressive Mine Workers of America and was in the midst of negotiating with the United Mine Workers of America ("UMW") with respect to a new agreement. The UMW membership at Decker has voted in favor of striking, but has recently reversed its plans for an immediate walkout (although it remains a possibility). For these and other reasons Decker cannot agree to deliver the entire 161,163 additional tons per month sought by Edison. Decker did agree to deliver 45,662 additional tons during the remainder of 1984 [the 1991 coal] in spite of these obstacles and the lack of any contractual obligation to do so.

In the concluding paragraph of the letter, Decker expressed its willingness to deliver the 1990 Reserve Coal to Edison in 1985:

> As stated in Decker's letter dated September 26, 1984, arrangements other than those demanded by Edison for the delivery of 462,000 tons of Reserve Coal at issue are possible, including delivery of 38,500 tons per month during 1985. Decker is ready, willing and able to deliver the 462,000 tons of Reserve Coal on the foregoing basis, or any other basis mutually agreed by the parties.

## DISCUSSION

■ Edison's motion for judgment on the pleadings is based on a theory that Decker's actions constituted a breach of the two 1982 Reserve Coal Agreements by anticipatory repudiation. Under the doctrine of anticipatory repudiation, if one party to a contract declares in advance that it will not perform at the time set for performance, the other party may bring an immediate action for total breach of the contract. Edison seeks a declaratory judgment that it is relieved of all of its obligations with respect to the 462,000 tons of 1990 coal. Such a judgment would not affect the remaining terms of the 1982

agreements. Decker has moved for summary judgment.

■ The official comment to section 2–610 of the Uniform Commercial Code describes anticipatory repudiation as

> ... an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance.

The Code retains a common law requirement that a statement repudiating a contract must be "positive and unequivocal." J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 6–2 at 213. *See also Dingley v. Oler,* 117 U.S. 490, 501–02, 6 S.Ct. 850, 853–54, 29 L.Ed. 984 (1886); *City of Fairfax v. Montgomery County,* 582 F.2d 1321, 1325–26 (4th Cir.1978), *cert. denied* 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979) (citing cases). Because the doctrine of anticipatory repudiation represents a harsh remedy, *Marr Enterprises, Inc. v. Lewis Refrigeration,* 556 F.2d 951, 956 (9th Cir.1977), the requirement that the repudiating statement be clear and absolute is a strict one, *City of Fairfax,* 582 F.2d at 1326.

■ Decker's September 26, 1984 letter was not a clear and positive statement repudiating the 1982 agreements with respect to the 462,000 tons of 1990 coal. In fact, the letter shows that Decker intended to adhere to the agreements, but misunderstood the acceleration terms and was willing to discuss with Edison acceleration of the delivery of the 1990 coal.

It is far from clear that the acceleration of the delivery of the 1990 coal to the last four months of 1984 was within the terms of the 1982 Mining Agreement. First, subparagraph 1(b) of the Agreement provides that coal deliveries could be accelerated to five years preceding the scheduled date "and with the consent of Decker, which shall not be unreasonably withheld, to any other year preceding that for which it is scheduled...." Decker interprets this as permitting Edison, as an unconditional right, to accelerate shipments no more than

five years from the scheduled year. Edison does not contest this interpretation, even though 1984 shipments would have been six years before 1990. Second, the Mining Agreement also calls for monthly deliveries of coal ratably over the course of the delivery year. In order to meet Edison's request for 1984 delivery, Decker would have been forced to treble the amount of 1990 coal it delivered each month.

■ The most damaging portion of Decker's September 26, 1984 letter states that "the earliest year into which [1990] Reserve Coal can be accelerated is 1986." This interpretation of the agreement is erroneous, as Decker recognized in its November 10, 1984 letter, and freely admits now. A party that briefly errs in interpreting a contract while manifesting an intention to abide by its terms cannot be said to have clearly and unequivocally repudiated the contract. Repudiation only occurs when a party with an accurate understanding of its contractual obligations indicates clearly that it will not honor those obligations or, perhaps, refuses to recognize what the contract requires when its erroneous interpretation is called to its attention.

The suggestion of repudiation that might be distilled from this statement is, moreover, greatly diminished by the rest of the September 26, 1984 letter. Decker agreed to accelerate delivery of the 182,652 tons of 1991 coal to the last four months of 1984, waiving notice and scheduling objections. At a minimum, this act suggests that Decker was seeking to accommodate Edison's desire for accelerated delivery of a portion of the Reserve Coal. Moreover, Decker also expressed its willingness to discuss "other arrangements" for accelerated delivery of the 1990 Reserve Coal and its desire to seek "pragmatic solutions" to the problems posed by Edison's sudden request for rapidly accelerated deliveries of the 1990 Reserve Coal.

■ Commonwealth makes much of its announcements on October 18, 1984 and November 2, 1984 that it considered Deck-

er to have repudiated its obligations with respect to the 1990 coal. Stating that another party has repudiated a contract, however, does not make it so. It is clear that anticipatory repudiation is determined with reference to the statements and actions of the repudiating party and not to those of its contractual counterpart.

■ Similarly, Edison's filing of a complaint on November 2, 1984 does not somehow transform Decker's September 26, 1984 letter into a repudiation. It is true that a party having repudiated a contract cannot revoke its repudiation if the other party has materially changed its position. It is also true that the filing of a complaint for anticipatory breach constitutes such a material change. *See e.g.,* J. White & R. Summers, sec. 6–2 at 215. However, filing a complaint for anticipatory breach can do no more than make an existing repudiation irrevocable. A condition precedent for irrevocability, absent here, is a clear and unequivocal repudiation of contractual obligations by the defendant.

Edison's August 31, 1984 letter stated that "Edison elects to accelerate the 1985 delivery of those tons not delivered in 1984." Edison argues that Decker's September 26, 1984 response was thus a rejection of not only 1984 delivery of the 1990 coal, but also 1985 delivery. This argument, however, ignores the fact that Decker did not reject Edison's August 22, 1984 request for 1985 delivery of the 1990 coal. Decker's September 26, 1984 letter, rather, was prompted by Edison's superseding request on August 31, 1984 for delivery during the last four months of 1984. In any event, Decker's September 26, 1984 letter does not represent repudiation of the agreements even if it is understood as responding primarily to a request for 1985 delivery.

Decker's motion for summary judgment covers much of the same ground as Edison's motion for judgment on the pleadings. Edison's memorandum in response notes that if its motion for judgment on the pleadings is denied, it intends to file evi-

dence in opposition to the summary judgment motion and perhaps a summary judgment motion of its own. Edison has 21 days from the date of this memorandum and order to file such materials. Decker's reply memorandum in support of its motion for summary judgment and in response to Edison's motion for summary judgment (if any) is due 14 days thereafter.

## CONCLUSION

Edison's motion for judgment on the pleadings is denied. Decision on Decker's summary judgment motion is deferred.