The UNITED STATES, Appellant,

v.

DEKONTY CORPORATION, Appellee.

No. 90–1356.

United States Court of Appeals, Federal Circuit.

Jan. 4, 1991.

Rehearing Denied Feb. 22, 1991.

Martha H. DeGraff, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellant. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director.

Robert W. Tate, Law Offices of Robert W. Tate, Seattle, Washington, argued, for appellee.

Before RICH, MAYER, and RADER, Circuit Judges.

RADER, Circuit Judge.

The United States (Government) appeals from the judgment of the Armed Services Board of Contract Appeals (Board). *DeKonty Corp.*, 90–2 BCA (CCH) ¶ 22,645, at 113,584 (ASBCA 1990). The Board found that the Government breached its contract with the DeKonty Corporation (DeKonty) by expressing an intent to withhold a scheduled progress payment. The Government appeals. This court reverses.

## BACKGROUND

The United States Navy (Navy) contracted with DeKonty for the construction of a child care facility at the Los Angeles Air Force Station. On several occasions during DeKonty's performance, the Resident Officer in Charge of Construction (ROICC) warned DeKonty that the Navy might terminate the contract for default. On July 5, 1985, the ROICC finally recommended a default termination. When informing DeKonty of the recommendation, the ROICC noted that "only a fraction of Termination for Default recommendations are ultimately approved and issued."

DeKonty stopped working at the site on July 16, 1985. On July 19, 1985, the Assistant ROICC wrote a memorandum to the Commanding Officer of the Western Division Naval Facilities Engineering Command (NAVFACENGCOM):

1. The Contractor, DeKonty Corporation, is currently being processed for default. WESTDIV has recommended default: the default package has been forwarded to NAVFACENGCOM for the final decision of the Contracting Officer.
2. Please process partial payment # 5.
3. Prior to issuing partial payment # 5, please check with Bobette Hill [the Termination Contracting Officer], Code 022, X7253, to determine 1) status of contract and 2) whether funds should be released at the time.

Six days later, Mr. DeKonty called the payment office to inquire about the status of progress payment # 5, due on August 8, 1985. He spoke with an unidentified individual who stated that the payment was on hold. Mr. DeKonty made notes of the conversation:

10:00 a.m. Called San Bruno about our June pay request, they informed us that of the $87,590.20 we applied for, approximately $9,000 was approved and they have this on hold until advised by Contracting Div. The Government/U.S. Navy has refused to comply with its contractual obligations.

On July 22, 1985, the ROICC told DeKonty to keep working. Nonetheless, on August 1, 1985, DeKonty formally abandoned performance. DeKonty alleged that the Navy had breached the contract by refusing to make the scheduled progress payment. The Navy later terminated the contract for default. DeKonty appealed to the Board which determined that the Navy committed an anticipatory breach before DeKonty abandoned performance. The Board stated that the Navy breached by expressing a clear intent not to make the August 8, 1985 progress payment. The Board awarded common law breach of contract damages.

## DISCUSSION

Under 41 U.S.C. § 609(b) (1987), this court reviews *de novo* the Board's conclusions of law and defers to its findings of fact unless unsupported by substantial evidence. This court determines that the Board erred.

The Supreme Court set forth the standard for anticipatory breaches:

When one party to [a] ... contract absolutely refuses to perform his contract, and before the time arrives for performance distinctly and unqualifiedly communicates that refusal to the other party, that other party can, if he choose, treat that refusal as a breach and commence an action at once therefor.

*Dingley v. Oler*, 117 U.S. 490, 499–500, 6 S.Ct. 850, 853, 29 L.Ed. 984 (1886). *Dingley* further adopted the language of an earlier case which stated:

[A] mere assertion that the party will be unable, or will refuse to perform his contract, is not sufficient; it must be a distinct and unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made....

*Id.* at 503, 6 S.Ct. at 854 (quoting *In re Smoot*, 82 U.S. 36, 21 L.Ed. 107 (1872)). This court followed that standard in *Cascade Pacific Int'l v. United States*, 773 F.2d 287 (Fed.Cir.1985). *Cascade* held that a contracting officer may terminate a contract for anticipatory breach in the event of a

positive, definite, unconditional, and unequivocal manifestation of intent ... on the part of the contractor ... not to render the promised performance when the time fixed ... by the contract shall arrive....

*Cascade*, 773 F.2d at 293.

The Board relied on two events to support its anticipatory breach determination. The Board found positive and unequivocal intent to breach in the July 19 memorandum. The Board also found an intent to breach in the July 25 statement by the unidentified individual at the payment office. These two events, however, considered individually or collectively, do not show a "positive, definite, unconditional and unequivocal" intent to refuse timely performance of a contract obligation. Rather the record contains substantial evidence showing that the Navy did not express any intent to breach.

### The July 19, 1985 Memorandum

The only portion of the July 19, 1985 memorandum which might be germane to DeKonty's allegation of breach is paragraph 3. In that paragraph, the Assistant ROICC asks the contracting officer to check the contract status before releasing payment. This paragraph is not an express refusal to pay DeKonty before the August 8 payment deadline. Rather the Assistant ROICC simply advised NAVFACENGCOM to check to see if the contract was still in effect before payment.

The circumstances justified the caution exhibited in the July 19 memorandum. DeKonty stopped performance at the job site on July 16. Default seemed imminent. Therefore, the Assistant ROICC correctly recommended that the Commanding Officer check the status of the contract before releasing funds. The July 19 memo is not "positive, definite, unconditional and unequivocal [evidence] of intent" to breach, but merely appropriate contract administration.

### The July 25, 1985 Conversation

Even assuming that the unidentified person who answered the telephone at the payment office had authority to speak for the Navy, the July 25 conversation did not supply evidence of an anticipatory breach. DeKonty contends that this conversation confirmed suspicions raised by the July 19 memorandum. As stated earlier, the July 19 memorandum did not express an intent to refuse contract performance. Similarly, putting a payment "on hold" does not mean that it is not going to be paid on time. The payment was not due until August 8, 1985.

Moreover, after the July 19 memorandum, the Navy encouraged continued performance on the contract. On July 22, 1985, the ROICC, Commander Niece, and the Assistant ROICC, Lt. Com. Dampier, recommended that DeKonty "proceed with diligence in the execution of construction on this project." At that time, DeKonty remained under an obligation to perform. The Navy's efforts to encourage DeKonty's performance show that the Navy had not earlier expressed an unequivocal intent to breach.

The Navy also processed and approved DeKonty's sixth payment request. As the

ROICC explained at a hearing before the Board, this action showed that the Navy considered the contract active. The Navy approved the sixth payment—dated July 31, 1985—on August 9, 1985. This evidence shows that the Navy intended to make timely payments.

In sum, the Navy's actions as a whole fall far short of communicating an intent not to perform in a "positive, definite, unconditional and unequivocal" manner. The July 19 memorandum and the July 25 telephone conversation do not satisfy the *Cascade* standard for an anticipatory breach.

### CONCLUSION

The Board's decision was erroneous. In the absence of an anticipatory breach on this record, we need not reach the issue of damages.

REVERSED.