**WEST COAST GENERAL CORPORATION,**
Appellant,

v.

**John H. DALTON, Secretary of the Navy, Appellee.**

No. 94–1075.

United States Court of Appeals, Federal Circuit.

Nov. 9, 1994.

Robert J. Marks, Marks & Golia, San Diego, CA, submitted for appellant. With him on the brief was Thomas F. DiPaolo.

John P. Sholar, Attorney, Commercial Litigation Branch, Department of Justice, Washington, DC, argued for appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Anthony H. Anikeefe, Asst. Director.

Before NEWMAN, LOURIE, and RADER, Circuit Judges.

RADER, Circuit Judge.

West Coast General Corporation sought an equitable adjustment. The Armed Services Board of Contract Appeals dismissed this claim as untimely. ASBCA No. 44294, 93–3 B.C.A. (CCH) ¶ 26,242 (1993). Because the Board properly determined that West Coast's appeal was untimely, this court affirms.

## BACKGROUND

The Department of the Navy awarded West Coast Contract No. N62474–83–C–2729 to build a Landing Craft Air Cushion Complex at the Marine Corps Base in Camp Pendleton, California. During construction, West Coast encountered a differing site condition that required relocation of a gas line.

On October 7, 1988, West Coast submitted a properly certified claim to the Resident

Officer in Charge of Construction (ROICC). West Coast sought an equitable adjustment of $133,213, plus an eighty-two-day time extension, for relocation of the gas line. The ROICC forwarded the claim to a contracting officer (CO), who denied it in a final decision on April 26, 1989. West Coast received the denial on April 28, 1989.

The denial informed West Coast of its appeal rights. West Coast could appeal to the Board within ninety days. Alternatively, West Coast could sue in the United States Court of Federal Claims within one year of receiving the decision. West Coast did neither.

West Coast had earlier submitted a certified claim to a ROICC for an equitable adjustment for extra road paving work. West Coast submitted the road paving claim on March 27, 1987, and the ROICC forwarded it to a CO. The CO issued a final decision denying the road paving claim on June 17, 1987. West Coast then filed a complaint in the Court of Federal Claims challenging the denial of the road paving claim. In a December 18, 1989 decision, the Court of Federal Claims dismissed West Coast's complaint for lack of jurisdiction. *West Coast General Corp. v. United States*, 19 Cl.Ct. 98 (1989) (*West Coast I*). The court held that, by submitting the claim to a ROICC instead of a CO, West Coast failed to comply with the requirements for properly submitting a claim. *Id.* at 101; *see* 41 U.S.C. § 605(a) (1988). The court also invalidated the CO's final decision on the claim. *West Coast I*, 19 Cl.Ct. at 101.

On January 4, 1990, West Coast told the Government that *West Coast I* invalidated the CO's final decision on the gas line claim. West Coast noted that it had submitted the gas line claim, like the road paving claim, to a ROICC. West Coast reasoned that *West Coast I* had revived the denied gas line claim. In February 1990, the parties discussed the possibility of settling both claims. In those discussions, the Government agreed that if settlement negotiations failed West Coast might have to resubmit the gas line claim. The parties did not settle.

On June 19, 1990, West Coast resubmitted its gas line claim to a CO. In a letter dated June 28, 1990, the CO responded:

> [No one] with appropriate authority ever [agreed] that the subject contracting officer's final decision [became] a nullity as a result of the decision in [*West Coast I*]. Accordingly, the 'gas line' claim will not be reconsidered and the previously rendered final decision remains in effect.

In April 1991, the United States Court of Appeals for the Federal Circuit decided *Dawco Construction, Inc. v. United States*, 930 F.2d 872 (Fed.Cir.1991). In that case, Dawco sent its claim for an equitable adjustment to a representative of the ROICC. Rejecting the Government's argument that a contractor must address or deliver a claim directly to a CO, this court held that Dawco properly submitted its claim. *Id.* at 880. Therefore, this court's decision in *Dawco* overruled the reasoning and result in *West Coast I*.

On March 20, 1992, West Coast appealed to the Board from the CO's failure to issue a final decision on the June 19, 1990 claim. The Government moved to dismiss, arguing that the April 26, 1989 decision was valid, and, thus, West Coast's January 19, 1990 appeal was untimely. The Board granted the Government's motion to dismiss.

## DISCUSSION

### I.

This court reviews decisions of the Board under a statutory standard of review. 41 U.S.C. § 609(b) (1988). This court will not set aside the Board's factual determinations unless they are "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or ... not supported by substantial evidence." *Id.*; *Federal Data Corp. v. United States*, 911 F.2d 699, 702 (Fed.Cir.1990). On questions of law, however, this court reviews the Board's decisions *de novo*. 41 U.S.C. § 609(b); *United States v. DeKonty Corp.*, 922 F.2d 826, 827 (Fed.Cir.1991). Although reviewing the Board's legal determinations *de novo*, this court accords them careful consideration because of the Board's experience

in construing Government contracts. *See United States v. Lockheed Corp.*, 817 F.2d 1565, 1567 (Fed.Cir.1987).

Under the Contract Disputes Act of 1978 (CDA), contract claims must be "submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). A claim sent to a ROICC satisfies this requirement. *Dawco*, 930 F.2d at 879–80. The CDA sets the time frame for appeal of a CO's final decision to the Board to within ninety days of receipt of the decision. 41 U.S.C. § 606 (1988). The Board may not waive this ninety-day statutory period. *Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1391 (Fed.Cir.1982). Alternatively, the contractor may file an action in the Court of Federal Claims within one year of receipt of the decision. 41 U.S.C. § 609(a)(1),(3) (1988 & Supp. V 1993).

West Coast received the CO's decision denying its gas line claim on April 28, 1989. The CO's decision set forth West Coast's appeal rights. The appeal period thus commenced April 28, 1989. West Coast's period for appealing to the Board ended in July 1989, and the period for filing a complaint in the Court of Federal Claims ended in April 1990. Under the CDA, West Coast could no longer appeal after April 1990. Thus, the Board properly dismissed West Coast's March 20, 1992 appeal.

## II.

The Court of Federal Claims' intervening, and incorrect, decision in *West Coast I* does not alter this result. Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court. *Sun Eagle Corp. v. United States*, 23 Cl.Ct. 465, 473 (1991); *cf. United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir.1987) (single district court decision does not bind other district judges in the same district); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir.1987). Thus, a Court of Federal Claims decision directed to one claim brought by a party does not create binding precedent for a separate claim—even a separate claim from the same party.

The Court of Federal Claims decided *West Coast I* approximately four months before West Coast's window for taking action in that court on the gas line claim closed. However, the dismissal of West Coast's road paving claim in *West Coast I* did not invalidate its gas line claim. Indeed, the Court of Federal Claims in *West Coast I* did not purport to determine any issues other than its ability to exercise jurisdiction over the road paving claim. Moreover, the trial court's refusal to take jurisdiction in *West Coast I* was incorrect. *Dawco*, 930 F.2d at 879–80. West Coast therefore had no legal basis for its reliance on *West Coast I* in its decision to forego any action in response to the CO's denial of its gas line claim.

## CONCLUSION

West Coast submitted its gas line claim to a CO and received a valid final decision. West Coast then allowed the statutory appeal period to run without taking any action. The Board correctly determined that this left it without jurisdiction to hear the appeal.

## COSTS

Each party shall bear its own costs.

*AFFIRMED*

PAULINE NEWMAN, Circuit Judge, dissenting.

This case turns on whether a party before the Court of Federal Claims can rely on a procedural decision whereby that court dismissed, as improperly filed, another claim of the same contract. The Board held that West Coast was required to follow, as to Claim II, the procedure that the court had declared invalid as to Claim I. By this procedural snare West Coast has been denied the right to appeal the merits of its claim.

In my view neither West Coast nor the Navy had the choice, much less the right, to ignore the decision of the Court of Federal Claims. Indeed the Navy did comply with that decision for a while, in this and other cases. However, the Navy changed its position after it was too late for West Coast to return to the invalid procedure. West Coast was fatally prejudiced by respecting the deci-

sion of the Court of Federal Claims. The Navy's disrespect to that court is contrary to law, as well as unfair to those who do business with the government. It should not be ratified by the Federal Circuit.

## I

## CHRONOLOGY

The sequence of events is important, as is the passage of critical time periods.

### A

On March 27, 1987 West Coast filed a claim (Claim I, the paving claim) with the Resident Officer in Charge of Construction (ROICC). The ROICC sent the claim to the contracting officer, who denied it on June 17, 1987. On June 16, 1988 West Coast appealed the denial of Claim I to the Court of Federal Claims. On December 18, 1989 that court, on the government's motion, held that it was incorrect for West Coast to have filed the claim with the ROICC instead of directly with the contracting officer. The Court of Federal Claims held that because West Coast "never submitted a proper claim to the contracting officer under the Contract Disputes Act, the contracting officer's decision is invalid," and dismissed the appeal for lack of jurisdiction. *West Coast General Corp. v. United States,* 19 Cl.Ct. 98, 101 (1989).

Meanwhile, Claim II (the gas line claim here at issue) had entered the contract disputes system. On October 7, 1988 West Coast filed Claim II with the ROICC, who again sent the claim to the contracting officer, who denied it on April 26, 1989. West Coast had until April 28, 1990 to appeal to the Court of Federal Claims. However, on December 18, 1989 West Coast learned from the Court of Federal Claims that filing with the ROICC was incorrect and the contracting officer's decision invalid. *West Coast, supra.* On January 4, 1990, West Coast wrote the Navy's counsel as follows:

This decision indicates claims must be addressed to the C.O., not the ROICC. I think this invalidates COFD# 89–8 [Claim II], d/4–26–89. I would like to discuss with you how we should handle this problem.

Joint Stip. ¶ 9; *see* ASBCA op. at 2. There ensued several discussions, as well as the reopening of settlement negotiations. A stipulated fact is:

[T]he attorneys for West Coast and the Southwest Division agreed that West Coast might be required to resubmit a request for a final decision on the gas line claim and have a new final decision issued if settlement was not reached.

Joint Stip. ¶ 14. The settlement negotiations failed a few months later, and West Coast resubmitted Claim II to the contracting officer on June 16, 1990. It is relevant that the Navy had earlier required such resubmission in a separate case, relying on the decision in *West Coast.* A stipulated fact is:

On January 18, 1990, the contracting officer for the Southwest Division issued a letter regarding the Lanthier claims stating:

Pursuant to the recent U.S. Claims Court decision in *West Coast General Corp. v. U.S.,* No. 354–88C, the subject claims of Lanthier Construction were not properly submitted until their submission by your letter to this command dated January 3, 1990 . . . .

Joint Stip. ¶ 13; *see* ASBCA op. at 2.

Nonetheless, when West Coast resubmitted Claim II the contracting officer refused to decide it. Again quoting from the stipulated facts:

On June 28, 1990, the contracting officer for the Southwest Division responded to West Coast's resubmission stating:

\*  \*  \*  \*  \*  \*

This activity does not agree nor did anyone with appropriate authority ever agree that the subject contracting officer's final decision is a nullity as a result of the decision in *West Coast General Corporation v. U.S.,* 19 Cl.Ct. 98. Accordingly, the "gas line" claim will not be reconsidered and the previously rendered final decision remains in effect.

Joint Stip. ¶ 16. The contracting officer denied the "appropriate authority" of the Court of Federal Claims, and stated that the Navy would not comply with the court's ruling. However, the time for West Coast to appeal

to the Court of Federal Claims from the "invalid" decision had expired on April 28, 1990.

## B

The Navy argues that West Coast should have ignored the holding of the Court of Federal Claims, and should have proceeded with Claim II as if the ruling in Claim I did not exist. It is surely untenable to require a party to continue to litigate a procedural issue that it has just lost in another claim of the same contract. West Coast's actions were reasonable and served to advance resolution of the merits of the claim. Indeed, to relitigate the identical procedural issue would have been an irresponsible use of the client's and taxpayers' resources.

Whatever the reason for the Navy's change of position for Claim II, we should not affirm a ruling whose effect is that a decision of the Court of Federal Claims will not be respected, even by a party to the same contract.

The panel majority states that since the judges on the Court of Federal Claims are unencumbered by each other's rulings, and can ignore them, West Coast should have ignored the decision of the Court of Federal Claims in *West Coast*. However, *stare decisis* among judges is not the issue. The issue is whether West Coast was entitled to rely on the court's holding in the circumstances of this case. In my view it was so entitled, and the Navy's prejudicial change of position should not be ratified.

## II

## THE SUBSEQUENT CHANGE IN LAW

West Coast's resubmission of Claim II to the contracting officer, on June 19, 1990, was made in accordance with the existing law of the Court of Federal Claims. Nine and a half months later the Federal Circuit held, in a different case, that it was indeed acceptable for a contractor to file its claim with the ROICC for forwarding to the contracting officer. *Dawco Construction, Inc. v. United States*, 930 F.2d 872, 879–80 (Fed.Cir.1991). The Board now gives retrospective effect to *Dawco*, holding that the events concerning

West Coast's Claim II, all of which occurred before the Federal Circuit decided *Dawco*, nonetheless are subject to *Dawco*. That is, the Board held—and this court agrees—that West Coast was required to prosecute its initial filing of Claim II, despite the holding of the Court of Federal Claims in *West Coast* that the contracting officer's decision was invalid.

In determining when a judicial decision is applied nonretroactively, the Supreme Court has provided comprehensive guidance:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (alterations in original) (citations omitted).

Each of the three *Chevron* criteria is on the side of West Coast. *Dawco* overruled the precedent of the Court of Federal Claims on which West Coast relied; retrospective operation retards the purpose of facilitating review of contract disputes on their merits; and the result is "injustice or hardship", for the right to appeal the merits is thereby lost. Indeed, had West Coast continued to prosecute Claim II after the Court of Federal Claims held that the contracting officer's decision was invalid, counsel might have had to defend against the charge of frivolousness, as well as wasting the client's resources in appealing an invalid decision.

West Coast's counsel proceeded in compliance with law. The Navy's change of position was unwarranted, unfair, and contrary to principles of judicial review. The Board's retroactive application of *Dawco* is contrary to the principles of *Chevron* and of justice. I can not join in affirming this disposition.