**EASTMAN KODAK COMPANY,**
Appellant,

v.

**Donald H. RUMSFELD, Secretary of Defense, Appellee.**

No. 02–1058.

United States Court of Appeals, Federal Circuit.

Jan. 16, 2003.

Terry L. Albertson, Crowell & Moring LLP, of Washington, DC, argued for appellant. With him on the brief were Linda S. Bruggeman and Ariel R. David.

C. Coleman Bird, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; and David M. Cohen, Director. Of counsel on the brief were Sharron Philo and Andrew Fechhelm, Attorneys, Defense Contract Management Agency, of Alexandria, Virginia. Of counsel was Elizabeth G. Candler, Trial Attorney, Department of Justice, of Washington, DC.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.

MAYER, Chief Judge.

Eastman Kodak Company appeals the decision of the Armed Services Board of Contract Appeals, ASBCA No. 51326, 2001 WL 865385 (July 24, 2001), concluding that claimed pension costs were not allocable to government contracts. The board determined that the government was entitled to a refund of the reimbursed pension costs for the period 1984 through 1986. Because the board properly concluded that Kodak's claimed pension costs were not allocable to the cost objectives of its government contracts, we affirm.

## Background

On November 29, 1978, Kodak was awarded a cost-plus-fixed-fee contract for the performance of certain classified work for the Department of Defense. Under the contract, it was required to comply with all of the Cost Accounting Standards ("CAS") and cost principles in effect at the time of contract award and to measure, assign, and allocate its pension costs according to CAS. The contract also included an administration of CAS clause that required Kodak to disclose any proposed voluntary change to a cost accounting practice within sixty days before the proposed change. Armed Services Procurement Regulation § 7.104.83(a) (1975).* This clause also required Kodak to agree to appropriate contract adjustments relating to its change in cost accounting practices. *Id.*

During the performance of the contract, Kodak maintained a qualifying pension plan, within the meaning of the Internal Revenue Code, which allocated its annual pension expenses to the divisions that performed the awarded contract. In turn, the government reimbursed Kodak for the allocable expenses. Before 1982, Kodak used the frozen initial liability actuarial cost method to calculate its annual pension expenses for purposes of funding, financial reporting, and government contract allocation. The frozen initial liability actuarial method is a spread gain actuarial cost method that does not independently produce a value for a pension plan's unfunded actuarial liability. Effective January 1, 1982, Kodak's management concluded that the frozen initial liability method could lead to unnecessary pension plan contributions, and adopted the projected unit credit actuarial cost method to calculate pension expenses. However, it failed to disclose this change to the government. For pension plan funding purposes Kodak continued to use the projected unit credit method, which is an immediate gain actuarial method that separately identifies a pension plan's unfunded actuarial liability. The determination of a pension plan's unfunded actuarial liability is essential to resolving the question of whether a pension plan is overfunded.

Later in 1982, Kodak contributed $360,750,000 to its pension plan, and deducted the entire amount for tax purposes, either in 1982 or as a carry-back to 1981. Using the projected credit method, Kodak calculated its pension expenses for 1982 as $118,350,000, leaving a $242,400,000 balance that was treated as a prepayment for future pension plan expenses. Kodak admits that from that point forward it had no obligation to further fund the pension plan. However, it applied the 1982 prepayment amount to the pension costs for the period 1983 through 1986.

In January of 1984, Kodak's pension fund became overfunded due to gains in the stock market, favorable investments, and use of the projected unit credit actuar-

---

* The requirements of this regulation are now covered by Cost Accounting Standards, 48 C.F.R. § 52.230–2 (2001), and Administration of Cost Accounting Standards, 48 C.F.R. § 52.230–6 (2001).

ial cost method to calculate its annual pension expenses. From 1984 through 1986, while the pension fund remained overfunded, the government continued to pay its share of the allocated pension costs as determined by Kodak. After audits by the Defense Contract Audit Agency, the contracting officer made a determination that Kodak was not in compliance with CAS. On January 12, 1998, the contracting officer issued a final decision determining that Kodak was indebted to the government for $9,617,856 (plus interest) for changing its method of accounting pension costs without disclosing it to the government, non-compliance with CAS, and improper inclusion of pension costs that were not allocable to cost objectives for the period 1984 through 1986.

## Discussion

We will not disturb the factual findings of the board unless they are fraudulent, arbitrary, capricious, so grossly erroneous as to necessarily imply bad faith, or unsupported by substantial evidence. 41 U.S.C. § 609(b) (2000); *McClure Elec. Constructors, Inc. v. Dalton,* 132 F.3d 709, 710 (Fed.Cir.1997). On questions of law, we review the board's decisions *de novo.* 41 U.S.C. § 609(b) (2000); *W. Coast Gen. Corp. v. Dalton,* 39 F.3d 312, 314 (Fed.Cir. 1994). Notwithstanding this lack of deference on questions of law, we accord the board's legal determinations careful consideration because of its experience in construing government contracts. *See Ingalls Shipbuilding, Inc. v. Dalton,* 119 F.3d 972, 975 (Fed.Cir.1997); *W. Coast,* 39 F.3d at 314.

At issue here is the proper interpretation of two regulatory provisions incorporated into Kodak's contract with the government: Accounting Standard for Composition and Measurement of Pension Cost, 4 C.F.R. § 412 (1986) ("CAS 412"); and Adjustment and Allocation of Pension Cost, 4 C.F.R. § 413 (1986)

("CAS 413"). CAS 412 and 413 were promulgated in 1975 and 1978 respectively, under the authority granted to the Cost Accounting Standards Board ("CASB") in the Defense Production Act Amendments of 1970, Pub.L. No. 91–379, § 719, 84 Stat. 796 (1970), codified at 50 U.S.C.App. § 2168 (repealed 1988) [hereinafter "Pub.L. No. 91–379, § 719"]. The original CASB was an agent of Congress, independent of the executive branch, consisting of the Comptroller General and four other members appointed by the Comptroller General. Pub.L. No. 91–379, § 719(a).

Under the Defense Production Act Amendments of 1970, CASB was given authority to "promulgate cost-accounting standards designed to achieve uniformity and consistency in the cost-accounting principles followed by defense contractors and subcontractors under Federal contracts." *Id.* § 719(g); *Rice v. Martin Marietta Corp.,* 13 F.3d 1563, 1565 (Fed. Cir.1993). In addition to promulgating cost accounting standards, CASB was authorized "to make, promulgate, amend, and rescind rules and regulations for the implementation of cost-accounting standards...." Pub.L. No. 91–739, § 719(h)(1).

Our analysis begins with the language of the CAS clauses. We also look to any guidance CASB, the promulgating authority, has published to aid our interpretation. *Perry v. Martin Marietta Corp.,* 47 F.3d 1134, 1137 (Fed.Cir.1995). CAS 412 and its companion provision on pensions, CAS 413, govern the determination, measurement, assignment, and allocation of pension costs to government contracts. Allocation occurs when a sufficient nexus exists between incurred costs and the activities or cost objectives (e.g., contracts) to which those costs are charged. Proper allocation of costs by a contractor is important because it may be necessary for

the contractor to allocate costs among several government contracts or between government and non-government activities. CAS 412 and 413, as applied to unfunded retirement plans such as Kodak's Retirement Income Plan, require pension plan costs to be assigned to the year in which such costs are incurred and allocated to contracts for that year, and prohibit assignment of such costs to any other year.

Kodak argues that the board improperly interpreted CAS 412.40(c) to permit a contractor to recover pension costs only in a year where there is a compellable liability to pay. It contends that this interpretation renders meaningless regulation language that permits allocation when liquidation is actually effected. Kodak reads the regulation as entitling contractors to allocate pension costs when there is a valid liability, or when liquidation can be compelled, or when there is no valid liability but liquidation is effected. Kodak agrees with the government that its pension plan costs for the period 1984 through 1986, were not allocable to cost objectives because liquidation of its liability for pension costs was not compelled. However, it relies on the alternative requirement of CAS 412.40(c), which provides for the allocation of pension costs to cost objectives if liquidation of liability is effected in the period for which the pension costs were incurred. Kodak contends that it has a liability for its pension costs because a portion of the $242,400,000 prepayment balance, considered an asset, was transferred to the pension plan. It argues that these transfers from the corporation's books to the pension plan were liquidated because the company was ultimately liable to the pensioners to pay pension plan costs.

The government responds that the board properly interpreted the language of CAS 412.40(c) to require the existence of a "valid liability" that is liquidated as an essential prerequisite for allocability to government contracts. And, since Kodak had no valid liability or obligation to make any contribution to its pension plan from 1984 through 1986, when the plan was overfunded, it was barred from allocating the amounts contributed in those years to its cost objectives. The parties' arguments are close to the solution on this point, but they both miss the mark.

CAS 412 requires, *inter alia*, government contractors with contracts subject to CAS to measure annually their pension plan assets and liabilities and to allocate pension plan gains and losses to their various contracts. 4 C.F.R. § 412.20 (1986). To that end, with respect to pension plans like the one at issue, CAS 412.40(c), which governs the assignment of pension cost, provides in relevant part: "Except for pay-as-you-go plans, the cost assignable to a period is allocable to cost objectives of that period to the extent that liquidation of the liability for such cost can be compelled or liquidation is actually effected in that period." *Id.* § 412.40(c). We read this language to require a contractor to have either a valid liability, one where pension costs can be compelled e.g., pursuant to the Employee Retirement Income Security Act of 1974, or an actual liquidation of a liability for pension costs, where the contractor's liability is not valid. The latter requirement means that a liability for pension costs must be liquidated, i.e., an obligation to defray pension costs must have been paid to an agency responsible for the payment or purchase of benefits, in the period for which the contractor seeks to have pension costs allocable to cost objectives. These requirements are further supported by Section (11) "Assignment of Pension Cost" of the September 24, 1975, Preamble, where CASB stated, in relevant part:

The underlying concept of the Standard is that when a *valid liability* exists, the

corresponding costs may be accrued irrespective of when the liability is liquidated. If the *liability* (to the pension fund or, for pay-as-you-go plans, to retirees) *is not valid*, it cannot be accrued; in order for it to be allocated to cost objectives of the current period, it must be liquidated (funded) in that period or within a reasonable period of time thereafter.

Cost Accounting Standards for Composition, Measurement, Adjustment, and Allocation of Pension Costs, 40 Fed.Reg. 43,-877 (Sept. 24, 1975) (emphasis added). CASB's intent with regard to the "valid liability" requirement is best demonstrated by an illustration provided in the regulation, CAS 412.60(c), which states that:

> Contractor H has a trusteed pension plan for its salaried employees. It computes $1 million of pension cost for a cost accounting period. Pursuant to the funding provisions of the Employee Retirement Income Security Act of 1974, the company must fund at least $800,000. Because the liquidation of the liability for the portion of pension cost required by law to be funded ($800,000) can be compelled, such cost is allocable to cost objectives of the period, in accordance with § 412.40(c). If Contractor H can be compelled by the trustee or the plan participants to fund the remaining $200,000, the liability therefore is also allocable to cost objectives of that period.

4 C.F.R. § 412.60(c) (1986). The alternative requirement of actual liquidation of a liability for pension costs, where the contractor's liability is not valid, is demonstrated by the following illustration: Contractor M has a qualified defined-benefit pension plan, which is funded through a funding agency. It computes $1 million of pension cost for a cost accounting period. However, pursuant to a waiver granted under the provisions of ERISA, Contractor M is not required to fund its pension plan. Contractor M also has no other requirement under law to fund the pension plan. Nonetheless, it funds ($800,000) against $1 million of assigned pension cost for the period, satisfying § 412.50(c)(4). Under the alternate requirement of § 412.40(c)(2), only $800,000 may be allocated to Contractor M's final cost objectives of the period. Cost Accounting Standard Board; Cost Accounting Standards for Composition, Measurement, Adjustment, and Allocation of Pension Costs, 60 Fed.Reg. 16,534, 16546–547 (March 30, 1995) (codified at 48 C.F.R. pts. 9903, 9904).

Thus, we conclude that Kodak is barred from allocating its 1984 through 1986 pension plan contributions to cost objectives for that period because it neither had a valid liability to make any contribution to its overfunded pension plan nor actual liquidation of a liability for pension costs, due to overfunding. Excess contributions to a plan are by definition unnecessary, and therefore cannot be allocated to government contracts.

Kodak next advances a general challenge to the board's interpretation of CAS 412.40, which includes several derivative arguments. It expostulates that the board's interpretation is (1) contrary to *Riverside Research Institute v. United States*, 860 F.2d 420 (Fed.Cir.1988); (2) inconsistent with CAS 412 regulatory history and other CAS provisions; (3) restrictive by imposing a full-funding requirement that accelerates the amortization of actuarial gains and losses; and (4) contrary to executive branch interpretations. We address each in turn.

Kodak argues that the board's interpretation of liability as used by CAS 412.40(c) is inconsistent with *Riverside*, which allowed for the amortization and allocation to government contracts of increased costs due to leasehold improvements. 860 F.2d

at 424. We think *Riverside* is not applicable here because that case concerns whether leasehold improvements constituted a cost under Defense Acquisition Regulation § 7.203.4(a). Kodak attempts to draw an analytical parallel between the costs of those leasehold improvements and the application of its 1982 pension prepayment contribution here to argue that it satisfied the valid liability requirement of CAS 412.40(c). While a contractor may use a prior year's pension prepayment to satisfy any liability to make contributions to its pension plan, CAS 412.50(c)(1), it cannot seek to allocate such prepayment to government contracts when the contractor has no "valid liability" or obligation to make pension contributions due to overfunding. 4 C.F.R. § 412.40(c) (1986). Kodak's *Riverside* argument is insufficient for this reason.

Kodak challenges the board's interpretation of the allocability provisions of CAS 412 on the basis of inconsistency with regulatory history and other CAS provisions. It contends that the board's interpretation imposes the CAS 412.50(b)(2) requirement to use the aggregate cost method on contractors regardless of the actuarial method they use. Kodak's argument is flawed because it inappropriately relies on CASB's treatment of pay-as-you-go plans to infer that CASB intended a contractor's payment of a pension contribution sufficient to allow allocation of the contribution to cost objectives, irrespective of any liability or obligation to make the pension contribution. CASB recognizes that pay-as-you-go plans should be treated differently from non-pay-as-you-go plans. CAS 412.40(c) makes this clear by excluding pay-as-you-go plans from assignable costs "allocable to cost objectives of that period to the extent that liquidation of the liability for such cost can be compelled or liquidation is actually effected in that period." *Id.* § 412.40(c). Moreover, Kodak's argument is not plausible since a pay-as-you-go plan

cannot be overfunded because a contractor is not funding the benefit obligation in advance, but is simply paying the benefits as they become due and payable. CAS 412.30(a)(12) also supports this conclusion by defining a pay-as-you-go cost method as one that "recogniz[es] pension cost only when benefits are paid to retired employees or their beneficiaries." *Id.* § 412.30(a)(12).

Kodak also perceives a conflict between the board's interpretation and the language of CAS 413.50(a)(2), which requires contractors using the immediate-gain actuarial cost method to amortize any actuarial gains or losses over a fifteen-year period. It contends that the requirement of a valid liability in order to allocate pension contributions has the effect of accelerating recognition of those gains and losses to the first year in which the plan is fully funded.

We see no conflict between the board's interpretation, which requires a "valid liability," and the language of CAS 413.50(a)(2), because the valid liability requirement does not interfere with the amortization of past actuarial gains or losses when a pension plan is overfunded. Turning first to CAS 413, we read this provision as addressing the adjustment of pension costs, allocable or not, by measuring actuarial gains and losses and assigning those gains and losses to cost accounting periods. 4 C.F.R. § 413.20 (1986). Because CAS 413.40(a) requires a contractor to make an actuarial valuation annually, the amortization of actuarial gains and losses must begin with the period for which the actuarial valuation is made. *Id.* § 413.40(a). If the period for which the actuarial valuation is made is one where the pension plan is overfunded, the contractor's pension costs are not allocable. However, if there is a valid liability that is liquidated, the contractor's pension costs, which may include non-material amortized

actuarial gains or losses, are allocable to government contracts for that period. *See id.* §§ 413.50(a)(2) and 413.60(a). Moreover, as we said, a contractor has no liability or obligation to contribute to an overfunded pension plan, regardless of whether the plan has normal cost for the cost accounting period or has cost resulting from the amortization of previous actuarial gains or losses.

Relying on a reverse analytical argument, Kodak urges that the 1995 amendments to CAS 412, specifically the adoption of the "full-funding limitation," indicate that there was no such authority under the former regulation. Therefore, it contends that the board's interpretation of the pre-revised regulation is improper because it effectively accelerates the amortization of actuarial gains or losses.

We understand the "full-funding limitation" to be a measuring point of when a pension plan is overfunded. The Summary section of the CASB final rule publication, addressing the 1995 amendments, provides in pertinent part: "The changes address pension cost recognition for qualified pension plans subject to the tax-deductibility limits of the Federal Tax Code, problems associated with pension plans that are not qualified plans under the Federal Tax Code, and problems associated with overfunded pension plans." Cost Accounting Standards for Composition, Measurement, Adjustment, and Allocation of Pension Costs, 60 Fed.Reg. 16,534. Upon closer examination of CASB responses to submitted comments, it states that:

> In this final rule, the Board refines the NPRM concept of a full-funding limitation. The full-funding limitation of the final rule is implemented through the definition and operation of the "assignable cost limitation" which defines the point when the plan is overfunded for cost recognition purposes. When a pension plan is overfunded, the Government would be violating its fiduciary duty to the taxpayers by advancing any further reimbursements to the contractor. The assignable cost limitation is similar to ERISA's pre-OBRA 87 full funding limitation, but uniquely defined to avoid confusion with ERISA terminology. As with the NPRM, whenever a plan is determined to be overfunded, that is, the actuarial value of assets exceeds the liability, all existing amortization bases are deemed fully amortized and eliminated.

*Id.* at 16,537. In light of this, Kodak's contention cannot stand.

Finally, Kodak argues that the board erred because its interpretation of CAS 412.40(c) is inconsistent with certain audit guidance issued by the Defense Contract Audit Agency. In *Perry v. Martin Marietta Corp.*, 47 F.3d 1134, 1137 (Fed.Cir. 1995), we declined to give the Department of Defense's interpretation of the regulations at issue any deference because the regulations were not promulgated by that agency. Following the same rationale here, because these standards are promulgated by CASB, it is that board's published guidance and interpretative aids that assist in our interpretation of the standards. *Perry,* 47 F.3d at 1137.

### Conclusion

Accordingly, the decision of the Armed Services Board of Contract Appeals is affirmed.

*AFFIRMED.*