# United States Court of Appeals for the Federal Circuit

---

**MICHAEL B. DONLEY, SECRETARY OF THE AIR FORCE,**
*Appellant,*

v.

**LOCKHEED MARTIN CORPORATION,**
*Appellee.*

---

2009-1261

---

Appeal from the Armed Services Board of Contract Appeals in no. 53822, Administrative Judge Robert T. Peacock.

---

Decided: June 10, 2010

---

STEPHEN C. TOSINI, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellant. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRYANT G. SNEE, Deputy Director.

TERRY L. ALBERTSON, Crowell & Moring LLP, of Washington, DC, argued for appellee.

---

Before BRYSON, CLEVENGER, and LINN, *Circuit Judges*.

BRYSON, *Circuit Judge*.

In 1991, the Air Force and Lockheed Corporation (now Lockheed Martin Corporation) entered into a contract for the development of the F-22 "new generation" fighter aircraft. The F-22 contract was a cost-plus-award fee contract with a total value of $9.55 billion. Under a cost-plus-award fee contract, a contractor is reimbursed for its costs and receives a profit, or fee. *Northrop Grumman Corp. v. Goldin*, 136 F.3d 1479, 1481 (Fed. Cir. 1998). Performance was scheduled to take place over an eight-to-nine-year period. This case grows out of a "rephasing" of the F-22 contract that was negotiated by the parties early in the contract performance period. The dispute concerns whether, under the applicable statutory, regulatory, and contractual provisions, the government is entitled to recover a portion of the negotiated price increase on the ground that it resulted from a change in Lockheed's accounting practices and could not lawfully be charged against the contract price.

I

The F-22 contract incorporated a number of provisions of the Federal Acquisition Regulation ("FAR"), including provisions of the Cost Accounting Standards ("CAS"). Among the pertinent FAR provisions incorporated into the contract was 48 C.F.R. § 52.230-2 ("FAR 52.230-2"), which governs the manner in which a contractor may alter its accounting practices and what duties the contractor must undertake when it makes such an accounting change. That regulation was issued pursuant to 41 U.S.C. § 422(h), which requires the Cost Accounting

Standards Board to promulgate regulations requiring contractors to agree to a contract price adjustment "for any increased costs . . . by reason of a change in the contractor's . . . cost accounting practices." *Id.* § 422(h)(1)(B).

By regulation, a contractor that wishes to modify its accounting practices must first negotiate the terms and conditions under which the change will be made with the appropriate Divisional Administrative Contracting Officer ("DACO"). FAR 52.230-2(a)(4)(ii). If the accounting change results in increased costs because expenses previously accounted as indirect are now directly charged to the government contract, the contractor is required to agree to a contract price adjustment and repay the government any increased costs caused by the accounting change. FAR 52.230-2(a)(2), (a)(5). The regulations also state that the amount of the price adjustment is generally limited to the additional amount paid by the government "in the aggregate" over "all of the contractor's affected CAS-covered contracts and subcontracts." FAR 30.602-3 (1993); *see* 41 U.S.C. § 422(h)(3); FAR 52.230-2(a)(5).

The FAR defines the term "affected CAS-covered contract," in pertinent part, to mean a contract in which the contractor "[u]sed one accounting practice to estimate costs and a changed cost accounting practice to accumulate and report costs under the contract." FAR 52.230-6(a)(1) (2005); FAR 30.001 (2005). The dispute in this case focuses on whether the F-22 contract was an "affected contract" and thus whether Lockheed's mid-1993 change in its accounting practices was subject to the FAR's limitations on the allowance of increased costs resulting from that change.

A

In 1992, the Air Force informed Lockheed that it anticipated a funding shortfall for the F-22 program. At the same time, Lockheed told the Air Force that it expected the costs of the F-22 project to increase. As a response to those funding issues, the Air Force issued a Request for Proposal ("RFP") on November 18, 1992, to "rephase" the F-22 contract. The RFP asked Lockheed to prepare a cost proposal that would bring the F-22 contract within the program's "revised funding profile" for fiscal years 1993 through 2001. The RFP identified several technical and schedule changes to the F-22 contract, such as deleting two aircraft and modifying the date for several performance milestones. The RFP also required Lockheed's proposal to include both an estimated cost and a not-to-exceed base price for the rephased contract.

The RFP required Lockheed to divide estimated expenses into five categories, referred to as "buckets." Those buckets were (1) deletion of two aircraft, (2) "Revised Program Baseline," (3) "Other Cost Changes," (4) "Weight Reduction Requirement Challenges," and (5) "Program Rephase Impacts." In the RFP, the Air Force specifically stated that the cost estimate should include "the proposed rephased hours with narrative substantiation including a discussion comparing the proposed changes with the current program." In addition, the Air Force required Lockheed to disclose a detailed breakout of labor costs.

On December 22, 1992, the Air Force issued Contract Modification P00059 as an "undefinitized contract action," which required Lockheed to rephase the F-22 contract. The Air Force later issued additional instructions for the rephase proposal, each time repeating the requirement for a summary of the build-up of man hours by calendar year.

Lockheed timely submitted its cost proposal on April 23, 1993.

Meanwhile, the Secretary of the Air Force recommended that several government contractors, including Lockheed, change their cost accounting practices to more accurately reflect the costs incurred on each of their contracts. As part of that effort, the Air Force initiated a "Comprehensive Overhead Cost Analysis and Control Review" process, which recommended specific changes to various contractors' accounting practices. In the course of that review process, the government urged Lockheed to change its accounting practices and directly charge certain personnel costs to the F-22 contract. Even though Lockheed voiced concern about the cost impact of those changes, it notified its DACO on June 4, 1993, that it would comply with the Air Force recommendation and change its accounting methods for all of its contracts. Lockheed indicated that to make those changes it would treat personnel costs associated with program management, master scheduling, industrial engineering, and engineering administration as direct costs. Lockheed sought to amend its disclosure statement to reflect the changed practices. In addition, it requested a waiver of the 60-day waiting requirement, and it asked permission to make the accounting changes effective as of June 28, 1993. The DACO waived the waiting period and permitted the changes to be made effective as requested.

On June 22, 1993, Lockheed sent a "General Order of Magnitude Cost and Rate Impact Study Reflecting Mid Year 1993 Accounting Changes" to the DACO. That study estimated that the accounting changes would increase the cost of the F-22 contract by more than $10 million for the period between mid-1993 and 1997. On July 19, 1993, Lockheed submitted its proposed forward pricing rates to

the DACO. Those pricing rates included both direct and indirect labor rates estimated under Lockheed's new accounting practices.

Lockheed also disclosed its new accounting practices to the Air Force's rephase negotiating team and indicated that it would use the new accounting practices in the rephase negotiation process. On July 29, 1993, Lockheed submitted an update to its rephase cost proposal. That update incorporated Lockheed's new accounting practices as well as a new union agreement that reduced labor rates. The update specifically identified, year by year, the increased costs to the F-22 contract caused by the change in Lockheed's accounting practices as well as the amount saved by the new labor agreement.

In August 1993 the DACO asked Lockheed to provide a more detailed study analyzing the effect of its accounting changes as applied to all of its contracts. The DACO initially required the study within 60 days, but later granted a 60-day extension of the deadline. The following month, the DACO provided "interim recommended rates" to the Air Force negotiating team to use in negotiating the estimated costs of the rephased F-22 contract. The DACO based those rates on Lockheed's then-existing accounting practices, which included the mid-year accounting changes.

On November 15, 1993, the Air Force and Lockheed agreed on the total estimated cost plus award fee for the rephased F-22 contract and executed contract Modification No. P00098, which "definitized" contract modification P00059. As part of that modification, the government included a provision that reserved its right to obtain a contract price adjustment in the event of contractor

noncompliance with the requirements of the governing Cost Accounting Standards.

While the Air Force Procurement Contracting Officer ("PCO") was negotiating the contract rephase with Lockheed, the DACO separately addressed the cumulative effect of the mid-1993 accounting changes on all of Lockheed's contracts. Lockheed timely submitted its cost impact study in December 1993. When submitting the study, Lockheed explained that the F-22 contract was not treated as an "affected contract" within the meaning of the CAS provisions and therefore was not included in the study.

Five years later, the Defense Contract Audit Agency ("DCAA") issued an audit report on Lockheed's cost impact study. In its report, the DCAA concluded that the change in Lockheed's accounting practices caused a significant increase in the cost to the United States of the F-22 contract. It further concluded that the F-22 contract was an "affected contract" and therefore should have been included in the cost impact study. The DCAA reached that conclusion based on its finding that the rephasing of the F-22 contract was merely a modification of the original contract and not a new contract. In 2002, the new DACO who was assigned to the F-22 contract issued a decision that the F-22 contract should have been included in Lockheed's cost impact study. As a result of that decision, the DACO asserted a government claim of approximately $14.7 million against Lockheed. Lockheed disputed that claim.

B

The Armed Services Board of Contract Appeals upheld Lockheed's challenge to the government's claim. The

Board cited the 2005 definition of the term "affected contract" and concluded that the 2005 definition applied to the 1993 rephased F-22 contract because the 2005 definition merely "makes explicit what we consider implicit in the CAS provisions."

In analyzing the negotiations associated with the repricing of the rephase modification of the F-22 contract, the Board noted that the negotiations were "unusually comprehensive," that the parties described the scope of the effort as a "repricing" of the contract, and that the scope of the rephase repricing efforts "was not coextensive with the scope of the incremental rephase technical changes." In particular, the Board found that the rephase negotiation process "comprehensively reexamined and reevaluated all of the work items to be performed," not just the "'incremental' or discrete additive/deductive items specifically mentioned in the RFP letter." Based on its findings, the Board concluded that the parties were "attempting to accurately determine the cost of the entire program and 'rebaseline' the contract to ensure compliance with budgetary constraints."

The Board then addressed the question whether "the cost impacts of the changed practices were fully integrated into the pricing structure of the entire contract as rephased" and concluded that they were. The Board found that "not only were the changed practices fully disclosed, but also that the DACO incorporated their effects in forward pricing rates provided to the Air Force for express use in the rephase negotiations." The Board noted that "the parties conducted extensive cost-specific negotiations regarding the increased number of hours, personnel, and associated costs that would be charged directly as a consequence of the changed practices." Based on its factual findings and its analysis of the nego-

tiating history of the rephase effort, the Board concluded that the F-22 contract was not an "affected contract" within the meaning of the applicable regulations and thus was not required to be included in Lockheed's cost impact study. The Board therefore sustained Lockheed's appeal. The government then took this appeal from the Board's decision.

II

Under the Contract Disputes Act, we uphold findings of fact by the Board "unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b). We review the Board's legal conclusions de novo. *W. Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 314-15 (Fed. Cir. 1994). In so doing, however, we give "careful consideration and great respect" to the Board's legal interpretations in light of the Board's considerable experience in the field of government contracts, *Fruin-Colnon Corp. v. United States*, 912 F.2d 1426, 1429 (Fed. Cir. 1990), including "its experience in interpreting the Federal Acquisition Regulations," *Titan Corp. v. West*, 129 F.3d 1479, 1481 (Fed. Cir. 1997).

As an initial matter, we note that although the Board applied the 2005 regulatory definition of "affected contract" to the 1993 rephased F-22 contract, the government did not object to the Board's doing so and does not argue for a different interpretation on appeal. In any event, as the Board recognized, the principles underlying the 2005 definition, e.g., requiring the accounting change to be the cause of the additional costs, were already implicit in the relevant regulations at the time of the 1992-93 contract modification. *See* 48 C.F.R. § 9903.306(a) (1993) ("In-

creased costs shall be deemed to have resulted whenever the cost paid by the Government results from a change in a contractor's cost accounting practices . . . and such cost is higher than it would have been had the practices not been changed.").

Under the principles incorporated in the 2005 regulation, a contract is "affected" and requires a price adjustment when the contractor "used one accounting practice to estimate costs and a changed cost accounting practice to accumulate and report costs under the contract." FAR 52.230-6(a)(1); FAR 30.001. We agree with the Board that a contract is not "affected" when each contract cost is estimated and reported using the same accounting methods, even if some costs are estimated and reported using one practice and other costs are estimated and reported using a different practice.

A

The government takes the position that the F-22 contract was "affected" by Lockheed's accounting changes because the November 1993 estimated cost agreement covered only a portion of the contract and did not reprice, for example, costs incurred prior to the contract modification. According to the government, because the 1992-93 repricing of the F-22 contract did not constitute an entirely new contract that replaced the original contract, but was only a modification of an existing contract, the F-22 contract is an "affected contract," and the government is entitled to recover the increased costs resulting from the change in Lockheed's accounting practices.

The critical inquiry under the FAR provision that defines an "affected contract" is not whether there is an entirely new contract; it is whether costs were estimated

under one accounting practice but reported under another. The Board answered that factual question in the negative. The Board first identified the "essential questions" to be whether the negotiating parties "knowingly repriced the contract using the changed practices rather than the practices used in pricing the original contract and whether the scope of that repricing effort was sufficiently comprehensive to justify a conclusion that the impact of the changed practices [was] fully incorporated in the contract price as rephased." It then determined that the additional accounting costs were "fully integrated and factored into the price of the entire contract as rephased," so that all expenses reported under the new accounting practices were also estimated under those practices.

In particular, the Board found that the "scope of the rephase repricing effort was not coextensive with the scope of the incremental rephase technical changes," and that the parties were "attempting to accurately determine the cost of the entire program" in light of the new budgetary constraints. The Board also observed that Lockheed "identified and justified" the increased costs, that the Air Force "understood and verified" those costs, and that from "late July through the completion of negotiations in October 1993, [Lockheed] and the Air Force negotiation team thoroughly discussed and negotiated the estimated impacts of the [accounting changes]." Those findings are supported by substantial evidence. The record shows that (1) Lockheed disclosed, in specific detail, the cost of the accounting changes to the Air Force during negotiations; (2) the DACO used Lockheed's new accounting practices to calculate forward pricing rates, which were used to negotiate the rephase cost estimate; and (3) a representative of the Air Force negotiating team acknowledged that "it was our intent to incorporate the impact of the ac-

counting changes, as they impacted the F-22, in our negotiations, and we believe we did so." The government attempts to dismiss that statement on the ground that it was made several years after the negotiations ended. The statement, however, was made in a memorandum representing the views of the Air Force negotiating team, and the government has not suggested any reason to believe that the Air Force representative was not being candid and accurate in his characterization of the pertinent events. With respect to that and other similar evidence, the government concedes that "there may be some evidence indicating that Lockheed's mid-year accounting changes were 'integrated and factored' into the rephrased F-22 contract price," but it regards that evidence as immaterial absent the formation of an entirely new contract.

The government contends that a contract must be an "affected contract" if the accounting changes were integrated into the contract price and the final estimated costs were not reduced to compensate for those additional expenses. However, the Board did not determine that additional accounting costs were tacked on to the contract estimate; it found that the parties created a wholly new cost estimate incorporating all of the additional expenses. Because those costs were consistently estimated and accrued, the Board concluded that the F-22 contract was not an "affected contract." Based on the Board's detailed findings and analysis of the rephase negotiations and the rules applicable to changes in accounting practices, we uphold the Board's conclusion that the statutory and regulatory provisions governing "affected contracts" were inapplicable to the rephased F-22 contract.

B

As an element of its challenge to the Board's decision, the government disputes the Board's finding that the Air Force validly agreed to the additional accounting costs. The government points to the clause in the rephased contract stating that "[a]ward of this contract does not constitute a determination [that Lockheed's practices are CAS compliant]," and reserving the government's right to an adjustment if Lockheed's practices are ultimately determined to be non-compliant. That clause, however, does not create a right to an adjustment or demonstrate a disagreement over contract costs. It merely indicates that the Air Force was not waiving whatever adjustment rights it may have had. Because the rephased F-22 contract was not an "affected contract," the government did not have any adjustment rights to retain.

Moreover, the government's contention that Lockheed "did not disclose its intent to remove the F-22 contract from the universe of CAS-affected contracts" and "failed to fully disclose the effect of its increased cost to the Government" is totally without merit. The Board found, with considerable evidentiary support, that Lockheed made the cost effects of its accounting changes clear to the Air Force negotiators and that they understood the effects of those changes.

C

The government argues that the Board erred because the relevant regulations require contractors to resolve increased accounting costs through a contract price adjustment, not through a contract modification, and that only the DACO can perform that adjustment. As the Board noted and the government does not contest, how-

ever, the PCO has authority to negotiate contract modifications. Because the PCO properly exercised the authority to negotiate and integrate the additional accounting costs into the modified contract, no adjustment was required under the relevant regulations, and the DACO's authority to perform that adjustment was not necessary.

The government also contends that the Board misinterpreted the DACO's actions with respect to the F-22 contract. In particular, the government asserts that the Board erroneously concluded that the DACO waived the right to an adjustment for three reasons: (1) because the DACO provided interim rates that reflected Lockheed's changed accounting practices; (2) because the DACO waived the 60-day notice period before Lockheed could implement its new accounting practices; and (3) because the DACO extended Lockheed's deadline for filing its detailed cost impact proposal. We disagree with the government's interpretation of the Board's decision. The Board did not hold that the DACO waived the government's right to an adjustment; rather, it held that the F-22 contract was not an "affected contract." The Board properly relied on the DACO's actions because they enabled Lockheed and the PCO to accurately incorporate the additional accounting costs into the rephase cost estimate.

The government argues that the DACO's use of interim forward pricing rates did not alter the status of the F-22 contract as an "affected contract" or prevent the DACO from later readjusting for cost increases, especially when the DACO did not have the detailed cost impact proposal. It is true that a DACO must provide accurate forward pricing rates for contracting officers, *see* FAR 15.407-3, and that the DACO has the authority to require an adjustment for any costs reported under a later ac-

counting practice but estimated under a former accounting practice, *see* FAR 52.230-2(a)(2).  In this case, however, the Board determined that Lockheed and the Air Force used the forward pricing rates to negotiate and integrate all of the additional costs into the rephased contract cost estimate, and it is that action that precludes the government's right to an adjustment.

Finally, the government asserts that the Board permitted Lockheed's accounting changes to be applied retroactively to the F-22 contract, in violation of FAR 52.230-2(a)(2).  Specifically, the government argues that the new accounting practices could not legitimately be incorporated into the rephased contract because the government issued P00059 before Lockheed implemented its new accounting practices.  However, P00059 was not a final agreement on estimated costs; it was an "undefinitized" contract modification that required the parties to submit and negotiate a new cost estimate.  For that reason, the fact that P00059 issued before Lockheed changed its accounting practices does not undermine the Board's decision.

**AFFIRMED**